# MULTIPURPOSE NOTE AND SECURITY AGREEMENT

Borrower: "I", "Me" and "My" Means Each Borrower Before Jointly and Severally | Lender: "You" and "Your" Means The Lender, Its Successors and Assigns

| | |
|---|---|
| HALLS & ALLEN LLC | Mountain National Bank |
| P O BOX 7<br>KODAK, TN 37764 | 300 East Main Street<br>Sevierville, TN 37862<br>(866)-428-7990 |

| Officer No. | BOM |
|---|---|
| Customer No. | |
| Loan No. | |
| Renewal of | |
| Loan Date | July 27, 2009 |
| Maturity Date | July 27, 2011 |
| Loan Amount | $1,959,088.13 |
| Dollars ($ $1,959,088.13 ) | |

NOTE: For value received,I promise to pay to you, or any other holder, at the address above, the principal sum of:
One Million Nine Hundred Fifty Nine Thousand Eighty Six and 13/100
together with interest at the rate of interest as provided below.

☒ Single Advance: I will receive all of this principal sum at one time. No additional advances will be made under this Note.
☐ Multiple Advance: The principal sum shown above is the maximum amount of principal I can borrow under this Note. Future principal advances are contemplated.

☐ Conditions: The conditions for future advances are

☐ Open-End Credit: You and I agree that I may borrow up to the maximum amount of principal more than one time. This option is subject to all other conditions and expires no later than

☐ Closed-End Credit: You and I agree that I may borrow up to the maximum amount of principal only one time (and subject to all other conditions).

INTEREST: Interest will accrue on a Actual/360 Day basis. I agree to pay interest on the principal balance owing from time to time as stated below. Each advance made to me under the terms of this Note will earn interest only from the date that I receive the advance. As provided for in this Note, the interest rate will apply to the outstanding principal balance that I owe. The amount of interest charged by you will not exceed the maximum rate of interest allowed by law.

☒ Fixed Rate: I agree to pay interest at the simple rate of 3.500 % per year, from 07/27/2009 until paid in full.

☐ Variable Rate: I agree to pay interest from _____ at the initial simple rate of _____ % per year. This rate may change as stated below.

PAYMENTS: I agree to pay this Note as follows:

Principal and Interest are repayable in 23 equal installment payments, amortized over 360 payment(s), in the amount of $8,863.66 each, commencing on August 27, 2009 and continuing monthly thereafter, and one (1) final payment consisting of the full amount of the principal and all accrued interest remaining due and payable on July 27, 2011.

POST MATURITY INTEREST: Interest will accrue after maturity on the unpaid principal balance of this Note on the same basis as interest accrues prior to maturity, unless a specific post-maturity interest rate is agreed to in the next sentence.

☒ If checked, interest will accrue at the rate of 24.00 % per year on the unpaid principal balance of this note not paid at maturity, including maturity by acceleration. Borrower and Lender agree that any charges for failure to repay principal at maturity are not a penalty or interest, but are intended to compensate the Lender for expenses arising from such delinquency or default.

☒ LATE CHARGE: IF MY PAYMENT IS MORE THAN 16 DAYS LATE, I WILL PAY A LATE CHARGE EQUAL TO 5.000 % OF THE PAYMENT AMOUNT OR $26.00 WHICHEVER IS GREATER.

☒ ADDITIONAL CHARGES:

In addition to accrued interest, I agree to pay the following charges: _____
SEE SETTLEMENT STATEMENT OF EVEN DATE _____;
and these charges ☒ are ☐ are not included in the Loan Amount.

ADDITIONAL TERMS:

SECURITY: I give you a security interest in the property described below to secure the obligations of this Loan:

UCC-1 financing statement in the name of Samuel R. Hall and Marjorie Jaclyn Hall covering the Debtor's twenty-five percent (25%) ownership interest as a General Partner of H-O-H, a Tennessee General Partnership as evidenced by that Collateral Assignment of Partnership Interest dated July 27, 2009 .

UCC-1 financing statement in the name of Halls & Allen LLC covering the types of property described in Exhibit A attached hereto and incorporated herein by reference. Said types of property are to be located on the property described on the attached Exhibit B.

UCC-1 financing statement in the name of Samuel R. Hall and Marjorie Jaclyn Hall covering the types of property described in Exhibit A attached hereto and incorporated herein by reference. Said types of property are to be located on the property described on the attached Exhibit B.

SEE ATTACHED EXHIBIT C

GUARANTORS: SAMUEL R. HALL, MARJORIE J. HALL, RONNI MICHELE ALLEN

Samuel R. Hall, Samuel Hall and Sammy Hall are one and the same person.
Marjorie Hall, Marjorie J. Hall and Marjorie Jaclyn Hall are one and the same person.
Ronni Michelle Allen and Ronni Michele Allen are one and the same person.

☒ If checked, this Note is secured by a separate:

Construction Loan Deed of Trust, Assignment of Rents, Assignment of Contract Rights, Leases and Security Agreement Dated May 23, 2007
Modification of Deed of Trust Dated July 27, 2009
Absolute Assignment of Rents and Leases Dated July 27, 2009

☒ ALL DEBTS - THE ABOVE PROPERTY WILL ALSO SERVE AS SECURITY FOR ALL OF MY PRESENT AND FUTURE DEBTS TO YOU.

THE PURPOSE OF THE LOAN IS: RENEW EXISTING DEBT AND EXTEND TIME FOR PAYMENT

**EXHIBIT**

A

# ADDITIONAL TERMS OF THE NOTE AND SECURITY AGREEMENT

ALSO AGREE TO THE FOLLOWING TERMS:

**1. DEFINITION:** "Loan" means this Note, Security Agreement, and Truth in Lending Disclosure, regardless of whether provided as an integrated document or separate documents; and any document referred to in the Note, Security Agreement, or Truth in Lending Disclosure is hereby incorporated by reference and made a part of the Loan. It also means any extensions, renewals, modifications, or substitutions of this Loan.

**2. PAYMENT:** Unless specifically stated otherwise in the payment of the Note, each payment I make will be applied first to any charges, costs, fees, or expenses I owe other than principal and interest, then to interest that is due, and finally to unpaid principal.

**3. MY OBLIGATION:** I understand and agree that my obligation to pay this Loan is separate and independent of any other person's obligation to pay it. I will still be obligated to pay this Loan even if you release any other person who has agreed to pay, extend new credit or renew or modify this Loan, or relinquish any right(s) you may have against me or any other person obligated to pay this Loan.

**4. MATURITY:** For purposes of this note the term "maturity" shall mean the following:
- If the note is a "demand" note, the date you make your demand or the date that payment of the note is accelerated by you, whichever is earlier;
- If the note is a "demand" note, with a stated alternate maturity date, the date of your demand or the alternative maturity date or the date that you accelerate payment of the note, whichever date is earlier; or
- In all other cases, the date set for the last regularly scheduled payment of principal or the date that you accelerate payment of the note, whichever date is earlier.

**5. SET-OFF:** You have the right to set-off my deposit accounts and any other rights that I may have to receive the payment of money from you. You may exercise your right of set-off without notice to me and without regard to the type or value of collateral or the existence of any guaranty or other agreement to pay this note.
You will not be responsible for the dishonor of any check when that dishonor occurs as a result of your exercise of the right of set-off against my account.

**6. PURCHASE MONEY SECURITY INTEREST:** With respect to purchase money security interest arising under this security agreement:
- Payments made on non-purchase money loans secured by this agreement will not be deemed applicable to any purchase money loans, and
- Payments made on any purchase money loan will be applied first to any non-purchase money portion of said loan, with the remaining balance to be applied to the purchase money obligations in the order in which the items of collateral were acquired. A purchase money loan means a loan used in whole or in part to acquire the collateral which secures the loan and any extension, renewal, consolidation or refinancings of such loans.

**7. ADDITIONAL SECURITY AND INDEBTEDNESS:** In addition to the collateral described on the face hereof, this Loan is secured by any additions, repairs, replacements, accessions, products or proceeds, including proceeds of any insurance payable as a result of loss or damage to the collateral, and any similar acquired collateral of the type specified. However, the security interest shall not attach to household goods not purchased with the proceeds of this loan or to other after-acquired consumer goods, with the exception of accessions, unless such after-acquired consumer goods are acquired within ten (10) days after you make this loan. Each present or future agreement securing debt I owe you will also secure the payment of this Loan, unless (1) the property securing other debt is my principal dwelling and you fail to provide me and all other persons with ownership interest in the dwelling with a required notice of the right to rescind; or (2) the property securing other debt is in household goods.

**8. WARRANTY OF TITLE:** I warrant to you that I own the collateral free and clear of liens or security interests, other than the security interest created hereunder and I will defend the collateral against any asserted claims or demands by other parties.

**9. COLLATERAL INSURANCE:** I agree at all times to keep the collateral insured against all insurable hazards in amounts equal to the full cash value of the collateral. Such insurance shall be in such companies as may be acceptable to you, with provisions satisfactory to you for payment of all losses thereunder to you as your interest may appear, and, if required by you, I will deposit the policies with you. Any money received by you under said policies may be applied to the payment of any indebtedness secured hereby, whether or not due and payable, or at your option may be delivered by you to me for the purpose of repairing or restoring the collateral. I hereby assign to you all right to receive proceeds of insurance not exceeding the amounts secured by my loan, direct any insurer to pay all proceeds directly to you, and appoint you as my attorney-in-fact to endorse any draft or check made payable to me in order to collect the benefit of any such insurance.

If I fail to keep the collateral insured as required by you, or if I fail to furnish to you evidence of such insurance, I will be in default, and you may, at your option and discretion, and in addition to your other remedies at law, in equity or by contract, purchase such insurance. Provided, however, you are not obligated to pay any insurance premiums or carry any form of insurance on the collateral. If you purchase such insurance, I agree to reimburse you for the premium, plus accrued interest. My obligation to so reimburse you for the purchase of such insurance shall be secured by the collateral, and shall bear interest at the simple interest rate set forth in my loan documents or in effect at the time you purchase the insurance. At your option, I agree to either reimburse you on demand for the premium paid by you to purchase such insurance, to pay said sums in any manner of installments required by you in connection with the remaining payments outstanding pursuant to this my loan, to pay as a balloon payment at the maturity of my loan or to allow you to extend the maturity of my loan in order to provide for my reimbursement of you for the payment of the premium for such insurance. However, your option to reschedule my payments to provide for reimbursement of the premium you paid for such insurance shall not create a new obligation or satisfy or replace my original obligation, but shall be simply a continuation of my original obligation.

I understand the insurance that you purchase WILL NOT provide any form of liability insurance for my benefit or anyone claiming through me. You may obtain this insurance through one or more companies, other than the insurance company used by me and such insurance will generally be more expensive than the insurance coverage I could voluntarily obtain from another insurance company.

If I obtain the required insurance on the collateral after you have purchased insurance hereunder, and I furnish to you satisfactory evidence that such insurance has been purchased, I will be entitled to a refund of the unused portion of the premium for the insurance you purchased, calculated from the effective date of the required insurance that I purchase on the collateral.

I authorize you to forward any information that you deem necessary to third parties performing services incidental to your rights and duties under this Loan, including but not limited to insurance monitoring and placement services.

**10. PRESERVATION OF COLLATERAL:** I will preserve and maintain the collateral and keep the collateral in good condition and repair and will allow you to inspect the collateral at any time. If I fail to pay any charges that I am obligated to pay to preserve or protect the secured property, I authorize you to make these payments on my behalf and add these payments to the unpaid principal balance of this note. These payments will then be secured by the property.

**11. TAXES:** I will pay all taxes and other encumbrances on the collateral promptly, and I will otherwise maintain the collateral free and clear of any liens, encumbrances or other security interests.

**12. SALE OF COLLATERAL (AND ASSUMPTION):** I will not sell, convey, lease or otherwise transfer the collateral or any part of it without first obtaining written consent from you. Unless you otherwise agree in writing, this Loan cannot be assumed by any person. If I attempt to transfer any interest in the collateral, including possession, I will be in default of this Loan.

**13. DEFAULT:** I will be in default of this Loan if any of the following events occur:
- I fail to make a required payment when due;
- I breach any promise I have made to you under the terms of this note, the security agreement (if applicable) or any other loan or agreement with you;
- Any representation, warranty, promise or statement that I have made to you proves to be for at the time it was made or given was) materially false or incorrect;
- I die, become insolvent, or initiate bankruptcy or similar proceedings, or am adjudged a bankrupt;
- Any of my property in which you have lien or security interest is attached or otherwise taken by another creditor, including any garnishment of my accounts with you;
- I fail to maintain insurance covering the collateral;
- The maturity of any indebtedness I owe to others is accelerated as a result of the occurrence of a default under this or any other agreement;
- You at any time believe that the prospect for repayment for any portion of the indebtedness secured hereby is significantly impaired.

**4. LENDER'S REMEDIES:** Upon default, you may at your option, do one or more of the following:
- You may, without notice, accelerate the maturity date of this note and require that all unpaid charges, interest and principal balances be immediately due and payable;
- You may exercise your right of set-off against any right I have to receive payment of money from you;
- You may exercise any rights or remedies you have under any other agreement which secures this note;
- You may demand additional security or obligors to insure repayment of this note.

**5. REMEDIES UNDER THE SECURITY AGREEMENT:** If I default, you may exercise all of the rights and remedies available to a secured creditor under the Uniform Commercial Code or other applicable federal or state law. I will be obligated to make the property available to you at a reasonably convenient place and time. I agree that you are then authorized to take possession of the collateral and sell it as provided under the terms of the Uniform Commercial Code or other applicable federal or state law. I agree that written notice sent to my address on the face of the note by first class mail ten (10) days in advance of any such sale will be reasonable notice.

**6. WAIVER:** To the extent permitted by law, I waive presentment, demand for payment, protest and notice of dishonor. No waiver of a default shall be deemed a waiver of any other or later default. If under the terms of this Loan, a security interest would be created in a principal dwelling used by me or any other person as a ome, you waive the security interest so created unless you have given an appropriate opportunity to rescind and the owner of the property has not exercised that right.

**7. PURCHASE MONEY LOAN:** If this is a purchase money loan, you may include the name of the seller on the check or draft for this loan.

**8. FINANCING STATEMENT:** I authorize you to file a financing statement describing the secured property and any other liens held by you. I represent and warrant that my exact legal name and address of legal residence is set forth on the first page of this Loan.

**9. SECURED BY REAL ESTATE OR RESIDENCE:** If this Loan is secured by real estate or a residence that is personal property, a default and your remedies for default will be determined by the terms of any separate document creating the security interest, applicable federal or state law, and, to the extent permitted by law and not contrary to the terms of this separate security document, by this Loan.

**0. ATTORNEY'S FEES AND COLLECTION COSTS:** In the event of default, I agree to pay all reasonable costs you incur to collect on this Loan, including attorney's fees, court costs, and other legal expenses.

**1. GOVERNING LAW:** This Loan shall be governed by the laws of the State of ___Tennessee___ and the United States of America.

**Notice of Furnishing Negative Credit Information**

You may report information about my loan account to credit bureaus. Late payments, missed payments, or other defaults on my account may be reflected in my credit report.

**Third Party Agreement**

I own the Property described in the Security section of this Note and Security Agreement and I agree to give you a security interest in that Property. I am not personally liable for payment of this debt. If the Borrower defaults, my interest in the secured Property may be used to satisfy the Borrower's debt. By signing, I agree to the terms of this Note and Security Agreement and acknowledge receipt of a complete copy of this Loan.

_____ (Seal)        _____ (Seal)
                              Date                                                 Date


_____ (Seal)        _____ (Seal)
                              Date                                                 Date

CO-SIGNERS: As a co-signer I agree that I must pay this note if it is not otherwise paid by Borrower when due. I understand that you may sue any co-signer separately or jointly, and you do not have to notify me if this note is not paid in a timely manner. The obligations of the co-signers executing this Loan shall not be affected by any discharge in bankruptcy granted to one or more Borrowers or co-signers of this Loan.

---

**Notice to Co-Signer**

You (the Co-Signer) are being asked to guaranty this debt. Think carefully before you do. If the Borrower does not pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the Borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The Bank can collect this debt from you without first trying to collect from the Borrower. The Bank can use the same collection methods against you that can be used against the Borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This Notice is not the contract that makes you liable for the debt.

X _____        X _____
      Co-Signer Signature or Initials              Co-Signer Signature or Initials

---

**FTC NOTICE**

IF APPLICABLE, ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**Signatures**

By signing under seal, I agree to the terms of this Loan and also acknowledge receipt of a copy of this Multipurpose Note and Security Agreement.

HALLS & ALLEN LLC
BY: _____                                  _____
      BORROWER: RONNI MICHELE ALLEN, Chief Manager                        Date


_____
                                                                          Date


_____
                                                                          Date


_____
                                                                          Date


_____
                                                                          Date


_____
                                                                          Date

# DISBURSEMENT

Borrower:
HALLS & ALLEN LLC

P O BOX 7
KODAK, TN 37764

LOAN TYPE.
Actual Day 360, Fixed
Type of Credit: Refinance of Loan #401523000
Loan Structure: Balloon
Funding Date: July 27, 2009

CUSTOMER TYPE: Limited Liability Company

Lender:
Mountain National Bank

300 East Main Street
Sevierville, TN 37862

Maturity Date: July 27, 2011
Loan Number:
Customer Number:
Initial Rate: 3.500 APR: 3.556

Principal and Interest are repayable in 23 equal installment payments, amortized over 360 payment(s), in the amount of $8,853.55 each, commencing on August 27, 2009 and continuing monthly thereafter, and one (1) final payment consisting of the full amount of the principal and all accrued interest remaining due and payable on July 27, 2011.

PURPOSE OF LOAN.

RENEW EXISTING DEBT AND EXTEND TIME FOR PAYMENT

DISBURSEMENT INSTRUCTIONS.  Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied.  Please disburse the loan proceeds of $1,959,086.13 as follows:

|  | $1,956,202.52 |
|---|---|
| **PREPAIDS** | |
| **\*\*\*\*\*\*\*\*\*\*** | |
| Loan Processing Fee | $260.00 (FIN) |
| Prepaid Release Fee | $5.00 (FIN) |
| TOTAL FINANCED PREPAID CHARGES | $265.00 |
| | |
| **FEES** | |
| **\*\*\*\*\*\*\*\*\*** | |
| UCC Termination\Lien Release Fee | $75.00 (FIN) |
| UCC Recording Fee | $75.00 (FIN) |
| Real Estate Filing Fee | $103.61 (FIN) |
| Real Estate Document Preparation | $1700.00 (FIN) |
| 1108 - Title Insurance Fee | $625.00 (FIN) |
| Real Estate Attorney Fee | $70.00 (FIN) |
| TOTAL FINANCED FEES | $2,626.61 |
| | |
| **TOTAL DISBURSED** | $1,959,086.13 |

HALLS & ALLEN LLC

RONNI MICHELE ALLEN, Chief Manager          07/27/2009
                                                              Date

_____          _____
                    Date                                         Date

_____          _____
                    Date                                         Date

_____          _____
                    Date                                         Date

Co-signers:

_____
                                          Date

_____
                                          Date

Guaranty:  By signing under seal, I unconditionally guarantee the payment of the note and any amounts agreed to be paid under the terms of the security agreement. I also agree that, to the extent applicable, all of the terms of this Loan will apply to me.

SEE SEPERATE GUARANTY AGREEMENTS

_____
                                          Date

_____
                                          Date

_____
                                          Date

_____
                                          Date

To Accompany Multipurpose Promissory Note and Security Agreement Dated July 27, 2009

## Exhibit A

### Types of property to be covered by UCC-1 financing statement in the name of Halls & Allen LLC:

All of Debtor's present and future right, title and interest in and to all of the following:

(1) All of the following which are used now or in the future in connection with the ownership, management or operation of the real property described in Exhibit B and/or the improvements on such real property (the "Property") (the "Property"): machinery; equipment, engines, boilers, incinerators, installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air, or light; antennas, cable, wiring and conduits used in connection with radio, television, security, fire prevention, or fire detection or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment; fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances; light fixtures, awnings, storm windows and storm doors; pictures, screens, blinds, shades, curtains and curtain rods; mirrors; cabinets, panelling, rugs and floor and wall coverings; fences, trees and plants; swimming pools; and exercise equipment (any of the foregoing that are so attached to the Property as to constitute fixtures under applicable law are referred to below as the "Fixtures");

(2) All furniture, furnishings, equipment, machinery, building materials, appliances, goods, supplies, tools, books, records (whether in written or electronic form), computer equipment (hardware and software) and other tangible personal property (other than Fixtures) which are used now or in the future in connection with the ownership, management or operation of the Property or are located on the Property, and any operating agreements relating to the Property, and any surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Property and all other intangible property and rights relating to the operation of, or used in connection with, the Property, including all governmental permits relating to any activities on the Property (the "Personalty");

(3) All current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, rights-of-way, strips and gores of land, streets, alleys, roads, sewer rights, waters, watercourses, and appurtenances related to or benefiting the Property, and all rights-of-way, streets, alleys and roads which may have been or may in the future be vacated;

(4) All proceeds paid or to be paid by any insurer of the Property, the Fixtures, the Personalty or any other item listed in this Exhibit A;

(5) All awards, payments and other compensation made or to be made by any municipal, state or federal authority with respect to the Property, the Fixtures, the Personalty or any other item listed in this Exhibit B, including any awards or settlements resulting from condemnation proceedings or the total or partial taking of the Property, the Fixtures, the Personalty or any other item listed in this Exhibit A under the power of eminent domain or otherwise and including any conveyance in lieu thereof;

(6) All contracts, options and other agreements for the sale of the Property, the Fixtures, the Personalty or any other item listed in this Exhibit A entered into by Debtor now or in the future, including cash or securities deposited to secure performance by parties of their obligations;

(7) All present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Property, or any portion of the Property (including proprietary leases or occupancy agreements if Debtor is a cooperative housing corporation), and all modifications, extensions or renewals (the "Leases");

(8) All earnings, royalties, accounts receivable (including accounts receivable for all rents, revenues and other income of the Property, including parking fees, charges for food, health care and other services), issues and profits from the Property, or any other item listed in this Exhibit A, and all undisbursed proceeds of the loan secured by the security interests to which this financing statement relates and, if Debtor is a cooperative housing corporation, maintenance charges or assessments payable by shareholders or residents;

(9) All refunds (other than real property tax refunds applicable to periods before the real property tax year in which the loan secured by the security interests to which this financing statement relates was made) or rebates of (a) water and sewer charges, (b) premiums for fire and other hazard insurance, rent loss insurance and any other insurance required by Secured Party, (c) taxes, assessments, vault rentals, and (d) other charges or expenses required by Secured Party to protect the Property, to prevent the imposition of liens on the Property, or otherwise to protect Secured Party's interests (collectively, the "Impositions") by any municipal, state or federal authority or insurance company;

(10) All tenant security deposits which have not been forfeited by any tenant under any lease;

(11) All names under or by which the Property or any part of it may be operated or known, and all trademarks, trade names, and goodwill relating to any of the Property or any part of it; and

(12) All proceeds from the conversion, voluntary or involuntary, of any of the above into cash or liquidated claims, and the right to collect such proceeds.

## Exhibit A

## Types of property to be covered by UCC-1 financing statement in the name of Samuel R. Hall and Marjorie Jaclyn Hall:

All of Debtor's present and future right, title and interest in and to all of the following:

(1) The Debtor's twenty-five percent (25%) ownership interest as a General Partner of H-O-H, a Tennessee General Partnership as evidenced by that Collateral Assignment of Partnership Interest dated July 27, 2009.

(2) All of the following which are used now or in the future in connection with the ownership, management or operation of the real property described in Exhibit B and/or the improvements on such real property (the "Property"): machinery; equipment, engines, boilers, incinerators, installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air, or light; antennas, cable, wiring and conduits used in connection with radio, television, security, fire prevention, or fire detection or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment; fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances; light fixtures, awnings, storm windows and storm doors; pictures, screens, blinds, shades, curtains and curtain rods; mirrors; cabinets, paneling, rugs and floor and wall coverings; fences, trees and plants; swimming pools; and exercise equipment (any of the foregoing that are so attached to the Property as to constitute fixtures under applicable law are referred to below as the "Fixtures");

(3) All furniture, furnishings, equipment, machinery, building materials, appliances, goods, supplies, tools, books, records (whether in written or electronic form), computer equipment (hardware and software) and other tangible personal property (other than Fixtures) which are used now or in the future in connection with the ownership, management or operation of the Property or are located on the Property, and any operating agreements relating to the Property, and any surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Property and all other intangible property and rights relating to the operation of, or used in connection with, the Property, including all governmental permits relating to any activities on the Property (the "Personalty");

(4) All current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, rights-of-way, strips and gores of land, streets, alleys, roads, sewer rights, waters, watercourses, and appurtenances related to or benefiting the Property, and all rights-of-way, streets, alleys and roads which may have been or may in the future be vacated;

(5) All proceeds paid or to be paid by any insurer of the Property, the Fixtures, the Personalty or any other item listed in this Exhibit A;

(6) All awards, payments and other compensation made or to be made by any municipal, state or federal authority with respect to the Property, the Fixtures, the Personalty or any other item listed in this Exhibit B, including any awards or settlements resulting from condemnation proceedings or the total or partial taking of the Property, the Fixtures, the Personalty or any other item listed in this Exhibit A under the power of eminent domain or otherwise and including any conveyance in lieu thereof;

(7) All contracts, options and other agreements for the sale of the Property, the Fixtures, the Personalty or any other item listed in this Exhibit A entered into by Debtor now or in the future, including cash or securities deposited to secure performance by parties of their obligations;

(8) All present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Property, or any portion of the Property (including proprietary leases or occupancy agreements if Debtor is a cooperative housing corporation), and all modifications, extensions or renewals (the "Leases");

(9) All earnings, royalties, accounts receivable (including accounts receivable for all rents, revenues and other income of the Property, including parking fees, charges for food, health care and other services), issues and profits from the Property, or any other item listed in this Exhibit A, and all undisbursed proceeds of the loan secured by the security interests to which this financing statement relates and, if Debtor is a cooperative housing corporation, maintenance charges or assessments payable by shareholders or residents;

(10) All refunds (other than real property tax refunds applicable to periods before the real property tax year in which the loan secured by the security interests to which this financing statement relates was made) or rebates of (a) water and sewer charges, (b) premiums for fire and other hazard insurance, rent loss insurance and any other insurance required by Secured Party, (c) taxes, assessments, vault rentals, and (d) other charges or expenses required by Secured Party to protect the Property, to prevent the imposition of liens on the Property, or otherwise to protect Secured Party's interests (collectively, the "Impositions") by any municipal, state or federal authority or insurance company;

(11) All tenant security deposits which have not been forfeited by any tenant under any Lease;

(12) All names under or by which the Property or any part of it may be operated or known, and all trademarks, trade names, and goodwill relating to any of the Property or any part of it; and

(13) All proceeds from the conversion, voluntary or involuntary, of any of the above into cash or liquidated claims, and the right to collect such proceeds.

Exhibit B

**Description of Real Property for UCC-1 financing statement in the name of Halls & Allen LLC:**

SITUATE in the Seventh (7th) Civil District of Sevier County, Tennessee and being all of LOT 4 REVISED of the RESUBDIVISION OF LOTS 2R-1 AND 4 – PROPERTY OF MINOR ETHERTON, as the same is shown on a plat of record in Map Book P37, Page 88 in the Register's Office for Sevier County, Tennessee, to which reference is here made for a more particular description.

ALSO CONVEYED is any interest the Grantor may have in that Lease Agreement with Ripley Entertainment, Inc. as is more particularly described in Memorandum of Lease dated May 24, 2001 and recorded in Book 1253, Page 744 in the Register's Office for Sevier County, Tennessee.

CONVEYED HEREIN AND SUBJECT TO a Joint Use Right of Way deed of record in Book 2817, Page 306 and re-recorded in Book 2821, Page 813, both in the Register's Office for Sevier County, Tennessee which grants and conveys a perpetual joint use easement for ingress and egress to and from Winfield Dunn Parkway and the eastern boundary of the subject property.

SUBJECT to a Deed for Utility Easement dated April 20, 2007 and recorded in Book 2828, Page 447 in the Register's Office for Sevier County, Tennessee, which conveys a perpetual easement fifteen (15) feet wide to Brian Eslinger to construct, install and maintain a sewer easement along the subject property.

BEING the same property conveyed to Halls & Allen, a Tennessee Limited Liability Company, by deed from Hail & Hail Enterprises, Inc., a Tennessee Corporation, dated May 23, 2007 and recorded in Book 2828, Page 273 in the Register's Office for Sevier County, Tennessee.

## Exhibit B

**Description of Real Property for UCC-1 financing statement in the name of Samuel R. Hall and Marjorie Jaclyn Hall:**

SITUATE in the Fifth (5th) Civil District of Sevier County, Tennessee, within the corporate limits of the City of Sevierville, Tennessee and being Lot 6 of GRANNY'S RIVER BOTTOM, PHASE I, as shown on a plat entitled "Granny's River Bottom, Phase I, Revision," of record in Large Map Book 1, Page 176 in the Register's Office for Sevier County, Tennessee, to which reference is here made for a more particular description.

THIS CONVEYANCE IS MADE SUBJECT to any and all applicable restrictions, easements, and building setbacks of record in the Register's Office for Sevier County, Tennessee including, but not limited to the following: The above described property may not be used for any business engaged in the selling of gasoline or diesel products through January 1, 2023. This prohibited use shall run with the land and be binding upon the Grantees, their heirs, executors, administrators, successors and assigns for a period ending January 1, 2023; however, the Grantors herein do not subject the above described property to the Reciprocal Easement Agreement by and between Three B Partners, a Tennessee General Partnership and Lowe's Home Center, Inc. dated January 28, 1998, of record in Right-of-way Book 16, Page 258 in the Register's Office for Sevier County, Tennessee, the subject property being conveyed prior to the recordation of such Reciprocal Easement Agreement.

THIS CONVEYANCE IS MADE SUBJECT to the notes, restrictions, easements and building setbacks, as shown on plats of record in Large Map Book 1, Page 176 and Map Book 28, Page 177 in the Register's Office for Sevier County, Tennessee.

Exhibit C

SITUATE in the Seventh (7th), Eighth (8th) and Fifth (5th) Civil Districts of Sevier County, Tennessee and being THREE (3) TRACTS more particularly described as follows:

TRACT ONE:
SITUATE in the Seventh (7th) Civil District of Sevier County, Tennessee and being all of LOT 4 REVISED of the RESUBDIVISION OF LOTS 2R-1 AND 4 - PROPERTY OF MINOR ETHERTON

TRACT TWO:
SITUATE in the Eighth (8th) Civil District of Sevier County, Tennessee and being LOT 5R OF SMOKEY VISTA

TRACT THREE-A 25% INTEREST ONLY IN AND TO THE PROPERTY DESCRIBED AS:
SITUATE in the Fifth (5th) Civil District of Sevier County, Tennessee, within the corporate limits of the City of Sevierville, Tennessee and being Lot 6 of GRANNY'S RIVER BOTTOM, PHASE 1

101007-009 ( 027-027.04, 018AD005.00, 049GC006.00 )   Deed of Trust
Lot 4-resub of Lots 2r-1 and 4 of Minor Etherton Property
Lot 5R of Smokey Vista
Lot 6 of Granny's River Bottom

**MAXIMUM PRINCIPAL INDEBTEDNESS FOR TENNESSEE RECORDING TAX PURPOSES IS $1,879,428.04.**

## CONSTRUCTION LOAN DEED OF TRUST, ASSIGNMENT OF RENTS, ASSIGNMENT OF CONTRACT RIGHTS, LEASES AND SECURITY AGREEMENT

### THIS INSTRUMENT SECURES A CONSTRUCTION LOAN WITH OBLIGATORY ADVANCES FOR COMMERCIAL PURPOSES.

THIS DEED OF TRUST (herein "Instrument") is hereby made this 23rd day of May, 2007, among the Grantor, HALLS & ALLEN LLC, A TENNESSEE LIMITED LIABILITY COMPANY, SAMMY HALL AND WIFE, MARJORIE J. HALL, AND H O H, A TENNESSEE GENERAL PARTNERSHIP (conveying a 25% interest in tract three only), and the Borrower, HALLS & ALLEN LLC, A TENNESSEE LIMITED LIABILITY COMPANY, all of Sevier County, Tennessee, and DWIGHT B. GRIZZELL, TRUSTEE, whose mailing address is P.O. Box 6519, Sevierville, Sevier County, Tennessee 37864-6519 (herein "Trustee"), and the Beneficiary, MOUNTAIN NATIONAL BANK, whose mailing address is P.O. Box 6519, Sevierville, Sevier County, Tennessee 37864-6519, (herein "Lender").

Borrower, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, conveys, and assigns to Trustee, in trust, with power of sale, the following described property located in Sevier County, Tennessee:

SITUATE in the Seventh (7th), Eighth (8th) and Fifth (5th) Civil Districts of Sevier County, Tennessee and being THREE (3) TRACTS more particularly described as follows:

**TRACT ONE:**
SITUATE in the Seventh (7th) Civil District of Sevier County, Tennessee and being all of LOT 4 REVISED of the RESUBDIVISION OF LOTS 2R-1 AND 4 – PROPERTY OF MINOR ETHERTON, as the same is shown on a plat of record in Map Book P37, Page 88 in the Register's Office for Sevier County, Tennessee, to which reference is here made for a more particular description.

ALSO CONVEYED is any interest the Grantor may have in that Lease Agreement with Ripley Entertainment, Inc. as is more particularly described in Memorandum of Lease dated May 24, 2001 and recorded in Book 1253, Page 744 in the Register's Office for Sevier County, Tennessee.

CONVEYED HEREIN AND SUBJECT TO a Joint Use Right of Way deed of record in Book 2817, Page 306 and re-recorded in Book 2821, Page 813, both in the Register's Office for Sevier County, Tennessee which grants and conveys a perpetual joint use easement for ingress and egress to and from Winfield Dunn Parkway and the eastern boundary of the subject property.

BEING the same property conveyed to Halls & Allen LLC, a Tennessee Limited Liability Company, by deed from Hall & Hall Enterprises, Inc., a Tennessee Corporation, dated May 25th, 2007 and recorded in Book 2825, Page 273 in the Register's Office for Sevier County, Tennessee.

Ronni Michele Allen, Ronni Michelle Allen, Ronnie Michele Allen and Ronnie Michelle Allen is one and the same person.

**Sevier County Tax Map: MAP 027  PAR. 027.04**

The above described real property has an address of: Winfield Dunn Parkway Sevierville Tennessee 37876.

**TRACT TWO:**
SITUATE in the Eighth (8th) Civil District of Sevier County, Tennessee and being LOT 5R OF SMOKEY VISTA, as shown by plat of record in Plat Map 33, Page 54 in the Register's Office for Sevier County, Tennessee, to which plat reference is here made for a more particular description.

SUBJECT to restrictions, reservations and easements of record in Misc. Book 51, Page 653 and Misc. Book 170, Page 197, and as amended by restrictive covenants of record in Misc. Book 245, Page 353, all in the Register's Office for Sevier County, Tennessee.

ALSO SUBJECT to any and all applicable restrictions, easements and building setback lines as are shown in the records of the said Register's Office.

1

Sammy Hall, Sammy R. Hall, Sammy Ray Hall, Samuel R Hall and Samuel Ray Hall is one and the same person.

Marjorie Hall, Marjorie J. Hall and Marjorie Jaclyn Hall is one and the same person.

**BEING** the same property conveyed to Sammy Hall and wife, Marjorie J. Hall, as tenants by the entirety, by deed from Robert L. Dekker and wife, Voncile Dekker, dated February 21, 2002 and recorded in Book 1395, Page 683 in the Register's Office for Sevier County, Tennessee.

### Sevier County Tax Map: MAP 018A, GRP. D, PAR. 005.00

The above described real property has an address of: 328 Smokey View Drive, Kodak, TN 37764

<u>**TRACT THREE-A 25% INTEREST ONLY IN AND TO THE PROPERTY DESCRIBED AS:**</u>
**SITUATE** in the Fifth (5th) Civil District of Sevier County, Tennessee, within the corporate limits of the City of Sevierville, Tennessee and being **Lot 6 of GRANNY'S RIVER BOTTOM, PHASE I**, as shown on a plat entitled "Granny's River Bottom, Phase I, Revision," of record in Large Map Book 1, Page 176 in the Register's Office for Sevier County, Tennessee, to which reference is here made for a more particular description.

**THIS CONVEYANCE IS MADE SUBJECT** to any and all applicable restrictions, easements, and building setbacks of record in the Register's Office for Sevier County, Tennessee including, but not limited to the following: The above described property may not be used for any business engaged in the selling of gasoline or diesel products through January 1, 2023. This prohibited use shall run with the land and be binding upon the Grantees, their heirs, executors, administrators, successors and assigns for a period ending January 1, 2023; however, the Grantors herein do not subject the above described property to the Reciprocal Easement Agreement by and between Three B Partners, a Tennessee General Partnership and Lowe's Home Center, Inc. dated January 28, 1998, of record in Right-of-way Book 16, Page 258 in the Register's Office for Sevier County, Tennessee, the subject property being conveyed prior to the recordation of such Reciprocal Easement Agreement.

**THIS CONVEYANCE IS MADE SUBJECT** to the notes, restrictions, easements and building setbacks, as shown on plats of record in Large Map Book 1, Page 176 and Map Book 28, Page 177 in the Register's Office for Sevier County, Tennessee.

**BEING A 25% UNDIVIDED INTEREST ONLY** of the property conveyed to H O H, a Tennessee General Partnership, having as its sole general partners, Jodi C. Ohman, Joe Ohman, Ralph R. Hamlin, Jeffrey Hamlin and Sammy Hall, also known as Samuel R. Hall and wife, Marjorie Jaclyn Hall, by deed from Jodi C. Ohman, Joe Ohman, Ralph R. Hamlin, Jeffrey Hamlin and Sammy Hall, a/k/a Samuel R. Hall and wife, Marjorie Jaclyn Hall, dated February 28, 2000 and recorded in Book 1035, Page 210 in the Register's Office for Sevier County, Tennessee.

### Sevier County Tax Map: MAP 049G, GRP. C, PAR. 006.00

The above described real property has an address of: Winfield Dunn Parkway Sevierville Tennessee 37876.

Together with all buildings, improvements and tenements now or hereafter erected on the property, and all heretofore or hereafter vacated alleys and streets abutting the property, and all easements, rights, appurtenances, rents (subject however to the assignment of rents to Lender herein), royalties, mineral, oil and gas rights and profits, water, water rights, and water stock appurtenant to the property, and all fixtures, machinery, equipment, engines, boilers, incinerators, building materials, appliances and goods of every nature whatsoever now or hereafter located in, or on, or used or intended to be used in connection with the property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light; and all elevators, and related machinery and equipment, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, mirrors, cabinets, paneling, rugs, attached floor coverings, furniture, pictures, antennas, trees and plants, and all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the real property covered by this instrument; and all of the foregoing, together with said property, are herein referred to as the "Property." IN TRUST, TO SECURE to Lender the following: (a) the repayment of the indebtedness evidenced by the note of even date executed by Borrower to Lender (hereinafter referred to as the "Note"), in the principal sum of **One Million Eight Hundred Seventy Nine Thousand Four Hundred Twenty Eight and 04/100($1,879,428.04)** with interest thereon, with the balance of the indebtedness due and payable on _May 23, 2008_ together with all renewals, modifications, and extensions thereof; (b) the payment of all other sums with interest thereon, as set forth in the Note, advanced in accordance herewith to protect the security of this Deed of Trust; (c) the performance of the covenants and agreements of Borrower contained herein and in the Construction Loan Agreement dated May 23, 2007, executed between Lender and Borrower (the "Loan Agreement"), and (d) the payment of any and all other indebtedness, whether direct or indirect, now or hereafter owing to Lender by Borrower, or by any individual or entity included in the term Borrower, regardless of the type, class, or purpose of any such other indebtedness, and however such indebtedness is evidenced, including, without limitation, the repayment of any Future Advances made by Lender pursuant to Paragraph 20 of this instrument (herein "Future Advances"), together with interest thereon. All of the above shall be hereinafter referred to collectively as the "Indebtedness". Such indebtedness shall not include any subject to the disclosure requirements of the Federal Truth-in-Lending Act if at the time such liability or indebtedness is incurred any legally required disclosure of the lien afforded hereby respecting such debt shall not have been made. All of the above shall be hereinafter referred to collectively as the "Indebtedness".

2

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and, has the right to grant, convey and assign the property, that the Property is unencumbered, and that the Borrower will warrant and defend generally the title to the Property against all claims and demands, subject only to those matters listed below:

### BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:

### SECTION 1. PAYMENT OF PRINCIPAL AND INTEREST.

Borrower shall promptly pay when due all principal and interest due on the indebtedness evidenced by the Note, including any prepayment and late charges provided in the Note, and the principal and interest due on any other obligations secured by this Deed of Trust.

### SECTION 2. TAXES, INSURANCE, AND OTHER CHARGES.

Borrower shall pay all taxes, assessments, insurance premiums, ground rents and other charges, fines and impositions attributable to the Property by making payments, when due, directly to the persons entitled to collect such payments. Borrower shall promptly furnish to Lender all notices of amounts due under this paragraph and receipts evidencing the timely payment of all such amounts.

If the Funds held by Lender exceed the amount required to pay taxes, assessments, insurance premiums, ground rents and other charges as they fall due, and if there is no default under this Deed of Trust and the Note, the excess shall be promptly refunded or credited against the sums secured hereby, at the Borrower's option. If the amount of the Funds held by Lender is not sufficient to pay taxes, assessments, insurance premiums, ground rents, and other charges as they fall due, Borrower shall pay to Lender the amount necessary to make up the deficiency within ten (10) days from the date Lender delivers notice requesting payment thereof.

Upon receipt of payment in full of the Indebtedness, Lender shall promptly refund any Funds held by Lender. If any part or parts of the Property, or any interest therein, is transferred or sold, or is acquired by Lender, Lender shall apply any Funds in its possession as a credit against the indebtedness prior to the sale or acquisition of the Property.

### SECTION 3. ASSIGNMENT OF RENTS; RIGHTS TO POSSESSION.

As additional security for the repayment of the Indebtedness, Borrower hereby assigns to Lender all rents, income or profits derived from the Property.

In the event of default hereunder, as set forth herein, Lender, in person, by agent or by judicially appointed receiver, shall be entitled to take possession of and manage the Property and to collect all rents, income and other profits derived from the Property, including amounts past due. Borrower agrees to relinquish peaceful possession to Lender. All rents, income and profits collected by the Lender or receiver shall be applied first to payment of the cost of management of the Property and collection of the rents, income and profit, including, but not limited to, the cost of receiver's fees, premiums or receiver's bonds, and reasonable attorneys' fees. The rents, income, and profits shall then be applied to the indebtedness secured by this Deed of Trust. Lender shall be liable to account only for the net rents actually received.

In connection with this Assignment of Rents, Borrower agrees to comply with all terms imposed upon it as lessor under any lease covering any part of the Property. Should Borrower default under any such lease, Lender may take whatever action it deems desirable to prevent or cure the default by Borrower. Lender shall have the right to enter upon the Property as often as it desires in order to prevent or cure any such default. In attempting to prevent or cure any such default, Lender may spend such sums of money as it deems necessary and Borrower hereby agrees to pay Lender immediately upon demand all sums so expended by Lender, together with interest from the date of payment by Lender at the highest lawful rate then in effect under applicable law. Such sums, and the interest thereon, shall become additional indebtedness secured by this Deed of Trust.

### SECTION 4. APPLICATION OF PAYMENTS.

Payments received by Lender under the Note and this Deed of Trust shall be applied to principal and interest payable on the Note and to all other sums secured by this Deed of Trust in such order and manner as are determined by Lender in its sole discretion, subject only to the provisions of this Deed of Trust.

### SECTION 5. LIENS.

Borrower shall promptly discharge any lien on the Property which has priority, or shall in the future attain priority, over this Deed of Trust; or, in the alternative, Borrower shall pay or perform the obligation secured by such lien in a manner acceptable to Lender, or shall in good faith contest or defend against enforcement of such lien by legal proceedings that prevent enforcement of the lien and are initiated with the written consent of Lender.

### SECTION 6. INSURANCE.

Borrower shall keep the improvements now existing or hereafter located on the Property insured for their full insurable value against loss by fire and such other hazards as may be required by Lender, including, but not by way of limitation, extended coverage, vandalism, malicious mischief, workman's compensation, builder's risk, public liability, and federal flood insurance if and as required under the federal Flood Disaster Protection Act. All insurance policies required pursuant to the preceding sentence shall include a standard provision, satisfactory to Lender, naming Lender as a Mortgagee Loss Payee.

All insurance shall be carried with companies approved by Lender. The duplicate original policies and renewals thereof shall be held by Lender, shall provide that loss be payable to Lender, as Lender's interest may appear therein, and shall otherwise be in form acceptable to Lender. In the event of loss, Borrower shall give immediate notice by mail to Lender. In such event, Lender may make proof of loss if not made promptly by Borrower, but Lender shall not be required to do so. Each insurance company concerned is hereby authorized and directed to make payment on such loss directly to Lender instead of to Borrower and Lender jointly. The insurance proceeds, or any part thereof, may be applied by Lender, at its option, either to the reduction of the indebtedness or to the restoration or repair of the Property. If the Property is conveyed to Lender or if title to the Property is otherwise transferred in extinguishment of the Indebtedness, all right, title and interest of Borrower in and to any insurance policies then in force shall be assigned to the new owner of the Property.

In no event shall any application of insurance proceeds to payment of sums due under this instrument operate to reduce the obligation of Borrower to make any periodic payments due and payable under this Deed of Trust and the Note unless such application constitutes final payment under the Note.

### SECTION 7. CONDEMNATION.

The proceeds of an award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property or any part of the Property, or in connection with any conveyance in lieu of condemnation, are hereby assigned to Lender and shall be paid directly to Lender. Lender may apply or release the funds so received in the same manner and with the same effect as provided in Section 6 for the disposition of insurance proceeds. In no event shall any application of such proceeds to payment of sums due under this instrument operate to reduce the obligations of Borrower to make any periodic payments due and payable under this Deed of Trust and the Note unless such application constitutes final payment under the Note.

3

## SECTION 8. PRESERVATION AND MAINTENANCE OF PROPERTY; LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.

Borrower shall keep the Property in good repair, and shall not commit waste or permit impairment or deterioration of the Property. If this Deed of Trust conveys a leasehold estate, Borrower shall comply with the provisions of any lease affecting the leasehold estate. If Borrower fails to do so, Lender shall have the right, but not the obligation, to take such action as it deems desirable to prevent or cure any default under this Section. Any amounts disbursed by Lender pursuant to this Section, with interest thereon at the highest lawful rate permitted by applicable law, shall become additional indebtedness secured by this Deed of Trust. Borrower expressly grants to Lender the right to enter upon the Property immediately and as often as Lender desires in order to prevent or cure any default by Borrower. Borrower shall not surrender its leasehold estate or interest, or modify or terminate any lease affecting such estate or interest, without the prior written consent of Lender. [If this Deed of Trust conveys a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligation under the declaration or covenants creating or governing the condominium or planned unit development, under the by-laws and regulations of the condominium or planned unit development, and under all other constituent documents. If a condominium or planned unit development rider is executed by borrower and recorded together with this Deed of Trust, such rider shall be incorporated herein by reference and shall amend and supplement the covenant and agreements of this Deed of Trust as if the rider were a part hereof.]

## SECTION 9. PROTECTION OF LENDER'S SECURITY.

If Borrower fails to perform all the covenants and agreements contained in this Deed of Trust, and a default occurs under any of the terms, conditions and provisions of any Loan Agreement referred to hereinabove, or any action or proceeding is commenced which materially affects Lender's interest in the Property, including, but not limited to, eminent domain proceedings, insolvency proceedings, building and housing code enforcement proceedings, arrangements or proceedings involving a bankrupt or decedent or the enforcement of any prior lien against the Property, then Lender at Lender's option may make such appearances, disburse such sums and take such action as Lender deems necessary to protect its interest hereunder, including, without limitation, disbursements for reasonable attorneys' fees, repairs to the Property, curing defaults under prior liens and removal of liens. Any amounts disbursed by Lender pursuant to this section shall become additional indebtedness secured by this Deed of Trust. Such amounts shall be payable upon notice from Lender, and shall bear interest from the date of disbursement at the highest rate permitted by applicable law, or at the rate provided in the Note if no highest rate is prescribed by applicable law. Nothing contained in this paragraph shall require Lender to incur any expense or to take any action hereunder.

## SECTION 10. INSPECTION.

Lender may enter upon and inspect the Property, provided that Lender gives prior notice of its intention to do so.

## SECTION 11. FORBEARANCE BY LENDER NOT A WAIVER.

Forbearance by Lender in exercising any right or remedy hereunder, or any related right or remedy otherwise afforded by law, shall not be a waiver of, or preclude the subsequent exercise of, any such right or remedy. The receipt by Lender of any past due installments under the Note or any other late payments of the Indebtedness shall not deprive Lender of the right to accelerate the maturity of the Indebtedness or of any other right of enforcement existing pursuant to the terms of this instrument. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the Indebtedness because of default hereunder.

## SECTION 12. TRANSFER OF PROPERTY, LENDER'S CONSENT.

If all or any part of the Property, or any legal or equitable interest therein, [or any ownership interest in Borrower or any constituent entity of borrower, if borrower is other than a natural person,] is voluntarily or involuntarily sold, conveyed in trust, or otherwise transferred, or any additional encumbrance is placed thereon, without Lender's prior written consent, Lender may, at its option, declare the Indebtedness to be immediately due and payable.

## SECTION 13. EVENTS OF DEFAULT; ACCELERATION; REMEDIES.

If Borrower (a) shall pay the Indebtedness, when due, according to its terms, (b) shall pay promptly all taxes, assessments, ground rents, and other charges against the Property when due, (c) shall keep up repairs, (d) shall keep the Property insured as provided herein, (e) shall pay any and all other sums when due, as herein provided, and (f) shall otherwise perform all of the covenants and conditions contained herein, then this trust conveyance shall be of no further force or effect. In such case, Lender shall execute and record a release of this Deed of Trust. Otherwise this trust conveyance shall remain in full force and effect, and, at the option of the lawful owner and holder of the Indebtedness, all remaining unpaid Indebtedness and all installments thereof shall be due and payable at once, without notice, upon any of the following events of default:

(a) Failure to pay the Indebtedness when due according to its terms at maturity;

(b) Failure to pay any Installment or other sums under the Indebtedness due prior to maturity;

(c) The voluntary or involuntary sale, encumbrance, or other conveyance of Borrower's interest in the Property, or any portion thereof, or of any legal or equitable interest therein, [or any ownership interest in Borrower or any constituent entity of borrower if Borrower is other than a natural person,] without the prior written consent of Lender, as required by Section 12 above;

(d) Default under any prior or subordinate deed of trust encumbering all or any part of the Property, or any other instrument or document evidencing or securing the Indebtedness, or otherwise entered into with Lender in connection with the Indebtedness secured hereby;

(e) The insolvency of Borrower, any constituent of Borrower, or any surety or guarantor of Borrower, or the commencement of legal or equitable proceedings under any bankruptcy, reorganization, insolvency, moratorium or other law or laws for the relief of Debtors, or any other laws related to Debtors, whether commenced by or against Borrower or any such surety or guarantor, including, without limitation, the appointment of a receiver, trustee, or liquidator over Borrower, any constituent of Borrower, or any such guarantor or surety, or any property thereof;

(f) Breach of any other covenant or agreement contained in this Deed of Trust and not related to payment of the Indebtedness, which breach is not cured within fifteen (15) days after Lender has given Borrower notice of such breach;

(g) Default in any other Indebtedness now or hereafter owed by Borrower to Lender;

In any event of default as set forth above, Lender shall have the right to pursue all remedies available to it hereunder, at law or in equity. In addition, in the event of default, Trustee, or his successor in trust, is hereby authorized and empowered, upon giving twenty (20) days' notice by three (3) publications for successive weeks in any newspaper of general circulation published in the county wherein the Property is located, to sell the Property, or any part thereof, in such parcels, manner or order as Beneficiary may direct, at the front door of the Courthouse in said county to the highest bidder for cash, at public outcry, free from the equity of redemption, the statutory right of redemption, exemptions of homestead, rights by virtue of marriage, and all other rights and exemptions of every kind, all of which are expressly waived. The Trustee or his successor in trust is further Lender may bid at any such sale. The Trustee may adjourn any sale hereunder and may reset such sale at a later time and/or dates by announcement of such at the time and place of the originally advertised sale without further publication. The purchaser at such sale shall be entitled to immediate possession of the Property upon the delivery to purchaser by Trustee of a deed for the Property. Prior to such sale, Trustee may enter and take possession of the Property, in which case Trustee shall be accountable only for net rents actually received by Trustee. In the event of sale hereunder, the proceeds will be applied by Trustee as follows:

4

**FIRST** - to pay any costs and charges of executing this trust, including attorney' fees and expenses of any litigation that may arise on account of the execution and enforcement of this trust;

**SECOND** - to pay the Indebtedness, or any balance thereof then remaining unpaid;

**THIRD** - the remainder to be paid to such parties as are legally entitled to it.

In the event of a sale of said Property under and by virtue of this trust, Borrower and all persons holding under Borrower shall be and become tenants at will of the purchaser of the Property from and after the execution and delivery of a deed to the purchaser, and shall pay the purchaser the reasonable rental value of the property after the sale. Borrower's tenancy shall be terminated at the option of the purchaser upon five (5) days' written notice.

If Borrower unsuccessfully challenges the validity of any such sale carried out pursuant to the terms of this Deed of Trust, Borrower shall pay the reasonable attorneys' fees and other legal expenses incurred by Lender and Trustee in defending the validity of the sale.

## SECTION 14. PROCEEDS FROM JUDICIAL OR TRUST SALE.

Without limitation, the lien of this Deed of Trust shall extend to the Interest of Borrower in the proceeds from any judicial or trust sale of the Property, including, without limitation, the proceeds from sale by foreclosure of any prior encumbrance to ,the extent that such proceeds exceed the amount necessary to satisfy such prior encumbrance. The trustee, officer, or other person in charge of any such sale or foreclosure is hereby directed to pay such excess proceeds to the holder of the Indebtedness to the extent necessary to retire the Indebtedness. Such person is hereby authorized, given a power of attorney, and directed to endorse any checks representing proceeds of sale as requested by the holder of the Indebtedness, pursuant to the provisions of this section.

## SECTION 15. UNIFORM COMMERCIAL CODE SECURITY AGREEMENT.

This Instrument is intended to be a security agreement pursuant to the Uniform Commercial Code for any of the items specified above as part of the Property which, under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code, and Borrower hereby grants Lender a security interest in said items. Borrower agrees that Lender may file this Instrument or a reproduction thereof, in the real estate records or other appropriate index, as a financing statement for any of the items specified above as a part of the Property. Any reproduction of this Instrument or of any other security agreement or financing statement shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, upon Lenders request any financing statements, as well as extensions, renewals, and amendments thereof, and reproductions of this Instrument in such form as Lender may require to perfect a security interest with respect to said items. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments and releases thereof, and shall pay all reasonable costs and expenses of any record searches for financing statements Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created pursuant to the Uniform Commercial Code any other security interest in said items, including replacements and additions thereto. Upon Borrower's breach of any covenant or agreement of Borrower contained in this Instrument, including the covenants to pay when due all sums secured by this Instrument, Lender shall have me remedies of a secured party under the Uniform Commercial Code and, at Lender's option, may also invoke the remedies provided in this Instrument as to such items. In exercising any of said remedies, Lender may proceed against the items of real property and any items of personal property specified above as part of the Property separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the Uniform Commercial Code or of the remedies provided in this Instrument.

## SECTION 16. BORROWER NOT RELEASED.

If Lender agrees for the benefit of any debtor to extend the time for payment or to modify the amortization of the Indebtedness, or any part thereof, Lender's action shall not release in any manner the continuing liability of Borrower or any other person on the Indebtedness. Borrower shall have no right to require Lender to Initiate proceedings against any obligor on the Indebtedness, to refuse to extend the time for payment by such person, or to refuse otherwise to modify the amortization of any of the Indebtedness.

## SECTION 17. REMEDIES CUMULATIVE.

Every right and remedy provided in this Deed of Trust is distinct from and cumulative to every other right or remedy under this Deed of Trust or afforded by law or equity. Every such right and remedy may be exercised concurrently, independently, or successively.

## SECTION 18. SUCCESSORS AND ASSIGNS BOUND; JOINT AND SEVERAL.

The covenants and agreements herein contained and the rights arising hereunder shall inure to the benefit of the respective successors and assigns of Lender and shall be binding upon the respective heirs, successors and assigns of Borrower. All covenants and agreements shall be joint and several.

## SECTION 19. NOTICE.

Unless otherwise required by applicable law, any notice to Borrower provided for in this Deed of Trust shall be given by mailing such notice by certified mail, return receipt requested, addressed to Borrower at the address given hereinabove for Borrower, or if no such address is given, at the Property's address or at such other address as may be designated by notice to Lender. Any notice to Lender shall be given by certified mail, return receipt requested, to Lender's address stated herein or to such other address as Lender may designate by notice. Any notice provided for in this Deed of Trust shall be deemed to have been given when sent in the manner designated herein.

## SECTION 20. SEVERABILITY.

In the event that any provision or clause of this Deed of Trust or the Note conflicts with any applicable law, the other provisions of this Deed of Trust and the Note shall be given effect as fully as possible without the conflicting provisions, and to this end the provisions of the Deed of Trust and the Note are declared to be severable.

## SECTION 21. PRIORITY OF THIS DEED OF TRUST; FUTURE ADVANCES; EXTENSIONS; MODIFICATIONS AND RENEWALS.

Any portion of the Indebtedness advanced after the execution of this Deed of Trust shall be deemed as a Future Advance. This section shall serve as notice to any subsequent encumbrance of the Property that Lender claims the priority of the lien of this Deed of Trust for all such Future Advances, as well as for all other obligations secured hereby. This section shall also be notice that Lender reserves the right to modify, extend, consolidate, and renew the Indebtedness, or any portions thereof, and the rate of interest charged thereon, without affecting the priority of this Deed of Trust.

## SECTION 22. WAIVER.

Borrower expressly agrees that the Trustee, or his successor, may execute the power of sale granted herein and the other powers and rights set forth herein without giving bond or taking oath. The Trustee shall not be liable to Borrower for any acts or omissions to act in the execution of his powers hereunder except for such acts or omissions as constitute gross negligence or wilful misconduct. Except in such instances of gross negligence or wilful misconduct, neither the Trustee nor Lender shall be obligated to provide an accounting of any funds received or disbursed in connection with the payment of the indebtedness

5

or the administration, enforcement, or foreclosure of this trust. Borrower expressly waives all legal, equitable, and statutory rights of redemption, exemption or homestead, all rights arising by virtue of marriage, and all other similar exemptions and rights arising under or created by an applicable statute or judicial decision.

### SECTION 23. NECESSITY OF WRITING.
The terms of this Deed of Trust may be modified in whole or in part only by a written instrument signed by Borrower and Lender and recorded in the Register's Office of the county in which this Deed of Trust is recorded. Any oral agreement to modify this instrument shall be void and of no force and effect.

### SECTION 24. JOINT AND SEVERAL OBLIGATIONS.
If Borrower is not the same person(s), or entity, all of the covenants and requirements of this Deed of Trust shall be the joint and several obligations of Borrower, and any reference to "Borrower" shall mean any or all of the individuals or entities constituting Borrower.

### SECTION 25. HEADINGS.
The titles and headings of the various sections and paragraphs hereof are intended solely for means of reference and are not intended for any purpose whatsoever to modify, explain or place any construction on any provision of this Deed of Trust.

### SECTION 26. GENDER.
As used herein, the singular shall include the plural, the plural the singular, and the use of any gender shall be applicable to all gender.

### SECTION 27. SUBSTITUTE TRUSTEE.
Lender, at Lender's option, may from time to time remove any trustee and may appoint a successor trustee by an instrument recorded in the county in which this Deed of Trust is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the trustee herein and by applicable law. Borrower further agrees that should such sale be made by the Trustee, he need not personally attend and conduct the same, but at his option, he may have the sale conducted by an agent or attorney selected by him.

### SECTION 28. LOAN AGREEMENT.
Borrower agrees to comply with the covenants and conditions of the Loan Agreement evidencing the indebtedness secured hereby, which is hereby incorporated by reference in and made a part of this instrument. All advances made by Lender pursuant to the Loan Agreement shall be indebtedness of Borrower secured by this instrument. All sums disbursed by Lender to protect the security of this instrument shall be treated as disbursements pursuant to the Loan Agreement. All such sums shall bear interest from the date of disbursement at the highest rate allowed by applicable law, provided that if no highest rate is prescribed by applicable law such amounts shall bear interest at the rate provided in the Note and shall be payable upon notice from Lender to Borrower requesting payment therefor.
From time to time as Lender deems necessary to protect Lender's interest, Borrower shall, upon request of Lender, execute and deliver to Lender, in such form as Lender shall direct, assignments of any and all rights or claims that relate to construction on the Property and which Borrower may have against any party supplying or who has supplied labor, materials or services in connection with construction on the Property. In case of breach by Borrower of the covenants and conditions of the Loan Agreement, Lender, at Lender's option, with or without entry upon the Property, may invoke any of the rights or remedies provided in the Loan Agreement, and may accelerate the sums secured by this instrument and invoke those remedies provided in this instrument.

### SECTION 29. HAZARDOUS WASTE.
Neither Borrower nor any affiliate or associate of Borrower nor, to the best knowledge of Borrower, any other person has ever caused or permitted any "Hazardous Material" (as hereinafter defined) to be placed, held, located or disposed of on, under or at the Property or any part thereof or any other real property legally or beneficially owned (or any interest or estate in which is owned) by Borrower or any affiliate or associate of Borrower and neither the Property nor any part thereof, nor any other real property legally or beneficially owned (or any interest or estate in which is owned) has ever been used (whether by Borrower or any affiliate or associate of Borrower or, to the best knowledge of Borrower, by any other person) as a dump site or storage site (whether permanent or temporary) for any Hazardous Material. As used herein, the term "Hazardous Material" shall mean any hazardous, toxic, radioactive or dangerous waste, substance or material defined as such in, or for purposes of, the Comprehensive Environmental Response, Compensation and Liability Act as such may be amended, any so-called "Superfund" or "Superlien" law, or any other federal, state or local statute, law, ordinance, code, rule, regulation, order or decree regulating, relating to, or imposing liability or standards of conduct concerning, any hazardous, toxic, radioactive or dangerous waste, substance or material, as may be now or at any time hereafter in effect (the "Environmental Laws").
Borrower hereby agrees to indemnify Lender and hold Lender harmless from and against any and all losses, liabilities, damages, injuries, costs, expenses and claims of any and every kind whatsoever, paid, incurred or suffered by, or asserted against, Lender for, with respect to, or as a result of any of the following:
(i) The presence on or under or the escape, seepage, leakage, spillage, discharge, emission, discharging or release from the Property or any part thereof or any other real property legally or beneficially owned (or any interest or estate in which is owned) by Borrower or any affiliate or associate of Borrower of any Hazardous Material including, without limitation, any losses, liabilities, damages, injuries, costs, expenses or claims asserted or arising under any of the Environmental Laws; or
(ii) Any liens against the Property or any part thereof or any interest or estate in any part thereof, created, permitted or imposed by the Environmental Laws, or any actual or asserted liability or obligations of Borrower or any affiliate or subsidiary of Borrower under the Environmental Laws.

IN WITNESS WHEREOF, Borrower has executed this instrument on the date and year first above written.

HALLS & ALLEN LLC, A TENNESSEE
LIMITED LIABILITY COMPANY

BY: _Ronni Michele Allen_
RONNI MICHELE ALLEN,
CHIEF MANAGER

H O H, A TENNESSEE GENERAL PARTNERSHIP

BY: _[signature]_
SAMMY HALL (AKA SAMUEL R. HALL),
GENERAL PARTNER

BY: _[signature]_
MARJORIE JACLYN HALL,
GENERAL PARTNER

_[signature]_
SAMMY HALL, INDIVIDUALLY

_[signature]_
MARJORIE J. HALL, INDIVIDUALLY

STATE OF TENNESSEE
COUNTY OF SEVIER

Personally appeared before me, the undersigned, a Notary Public, **RONNI MICHELE ALLEN**, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who acknowledged that she executed the within instrument for the purposes therein contained, and who further acknowledged that she is the **CHIEF MANAGER** of the maker, **HALLS & ALLEN LLC, A TENNESSEE LIMITED LIABILITIY COMPANY,** or a constituent of the maker and is authorized by the maker or by its constituent, the constituent being authorized by the maker, to execute the instrument on behalf of the maker.

WITNESS my hand, at office, this 23rd day of May, 2007.

_[signature]_
NOTARY PUBLIC

My Commission expires: 2|22|20__

_[notary seal: MARCIA M. REAGAN, STATE OF TENNESSEE, NOTARY PUBLIC, SEVIER COUNTY]_

STATE OF TENNESSEE
COUNTY OF SEVIER

Personally appeared before me, the undersigned, a Notary Public, **SAMMY HALL (AKA SAMUEL R. HALL) AND MARJORIE JACLYN HALL**, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who acknowledged that they executed the within instrument for the purposes therein contained, and who further acknowledged that they are the **GENERAL PARTNERS** of the maker, **H O H, A TENNESSEE GENERAL PARTNERSHIP,** or a constituent of the maker and is authorized by the maker or by its constituent, the constituent being authorized by the maker, to execute the instrument on behalf of the maker.

WITNESS my hand, at office, this 23rd day of May, 2007.

_[signature]_
NOTARY PUBLIC
My Commission expires: 2|22|20__
STATE OF TENNESSEE
COUNTY OF SEVIER

_[notary seal: MARCIA M. REAGAN, STATE OF TENNESSEE, NOTARY PUBLIC, SEVIER COUNTY]_

Personally appeared before me, the undersigned authority, a Notary Public, **SAMMY HALL AND WIFE, MARJORIE J. HALL**, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence) and who acknowledged that they executed the within instrument for the purposes therein contained.

WITNESS my hand, at office, this 23rd day of May, 2007.

_[signature]_
NOTARY PUBLIC

My Commission Expires: 2|22|20__

_[notary seal: MARCIA M. REAGAN, STATE OF TENNESSEE, NOTARY PUBLIC, SEVIER COUNTY]_

PREPARED BY:
JOHNSON, MURRELL & ASSOCIATES
150 COURT AVENUE
SEVIERVILLE, TN 37862

7

VOL: 2828/277-283

**07032915**

| | |
|---|---|
| TR 7 PG BA: | 106892 |
| 05/25/2007 | 01:00 PM |
| VALUE | 1879428.04 |
| MTG TAX | 2159.04 |
| TRN TAX | 0.00 |
| REC FEE | 35.00 |
| DP FEE | 2.00 |
| REG FEE | 1.00 |
| TOTAL | 2197.04 |

STATE OF TENNESSEE, SEVIER COUNTY
**SHERRY ROBERTSON HUSKEY**
REGISTER OF DEEDS

Book 2828 Page 283

This Instrument Prepared by:
Thomas H. Dickenson
Hodges, Doughty & Carson, PLLC
P.O. Box 869
Knoxville, TN 37901

The maximum principal indebtedness for Tennessee Recording Tax Purposes is $79,658.09 (new money).

## MODIFICATION OF DEED OF TRUST

This Modification of Deed of Trust ("Modification") is executed the 27th day of July, 2009, by and between HALLS & ALLEN LLC, a Tennessee Limited Liability Company ("Borrower"), SAMMY HALL (A/K/A SAMUEL RAY HALL OR SAMUEL R. HALL) AND WIFE, MARJORIE JACLYN HALL, INDIVIDUALLY, AND H-O-H, a Tennessee General Partnership (the Halls, Borrower and H-O-H are hereinafter collectively referred to as "Grantor"); and MOUNTAIN NATIONAL BANK (hereinafter referred to as "Lender").

## W I T N E S S E T H :

WHEREAS, Borrower executed a Note payable to Lender dated May 23, 2007 in the original principal amount of One Million Eight Hundred Seventy Nine Thousand Four Hundred Twenty Eight and 04/100 ($1,879,428.04) (hereinafter referred to as the "Note"). The Note is secured by a Deed of Trust in favor of Lender of record in Book 2828, Page 277 in the Register's Office for Sevier County, Tennessee (the "Deed of Trust"); and

WHEREAS, the Deed of Trust encumbers the real property more particularly described on **Exhibit "A"** attached hereto and incorporated by reference (the "Collateral); and

WHEREAS, the Deed of Trust is subject to a Subordination Agreement dated May 23, 2007 and recorded in Book 2828, Page 284 in the Register's Office for Sevier County, Tennessee the "Subordination Agreement"); wherein the Deed of Trust became a first lien upon the Collateral and the Deed of Trust in favor of John Parker, Sr. of record in Book 2668, Page 377 in the Register's Office for Sevier County, Tennessee became a second lien as to the Collateral; and

WHEREAS, the Subordination Agreement has been amended by Amendment to Subordination Agreement of even date herewith; and

WHEREAS, the Borrower and Lender desire to modify the terms of the Deed of Trust to extend the payment term and to advance additional funds.

NOW, THEREFORE, in consideration of One ($1.00) Dollar and other good and valuable consideration, including the covenants and agreements contained herein, the receipt and legal sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1. The Bank and the Borrower agree to modify the terms and conditions for repayment of the Borrower's obligation in accordance with the terms and conditions set forth herein and in the Modified Note of even date. It is expressly agreed that this Modification is supplemental to that evidenced by the Note and Modified Note of even date, which by this reference is made a part hereof. All of the terms and conditions of the Note and Deed of Trust, unless specifically modified herein, are made a part of this Modification. The parties agree that they do not intend for this Modification to constitute a novation and do not discharge the Borrower's pre-existing obligation under the Note or Modified Note of even date;

1

documents are referred to as "the loan documents". A default under the loan documents constitutes a default under this Modification and the Deed of Trust. This Modification and the Deed of Trust shall also secure any extensions, renewals, refinancings or modifications of the Note, and changes in the form of said indebtedness and the instruments evidencing the same, without the necessity of noting such renewal, extension, refinancing or modification on this Modification, or the Deed of Trust or recording any notation in the Register of Deeds Office. The terms of said indebtedness are incorporated hereby by reference as fully as if copied herein verbatim.

8. This conveyance shall also secure the payment of any other indebtedness, presently existing or hereafter arising, of any type or kind, direct or contingent, owed or to be owed by Borrower (or any one of the Borrowers) to Lender; and this Modification and this Deed of Trust shall remain in full force and effect until all obligations secured hereby are fully paid; provided, however, this Modification and the Deed of Trust shall not secure any such other credit subject to the provisions of Regulation Z of the Board of Governors of the Federal Reserve System unless any required Notice of the Right to Cancel has been given.

9. The parties agree to this Modification and agree that the Note shall be modified as set out above and that the Note and all the covenants and conditions contained therein shall remain the same except as is modified by this Instrument. The parties agree that this Modification does not constitute a novation, an accord or satisfaction of the Note, it being the parties intention that the Note shall continue in all respects except for the amendments described herein.

10. Section 3 of the Deed of Trust, along with any other provisions of the Deed of Trust that in any way relate to an assignment of rents and leases, is hereby deleted in its entirety, and such provisions are replaced by an "Absolute Assignment of Rents and Leases" executed contemporaneously herewith.

*11. A release of the Deed of Trust shall also be and constitute a release of this Modification.*

**IN WITNESS WHEREOF**, the parties have executed this Modification as of the day and date first above written.

HALLS & ALLEN LLC, a Tennessee Limited Liability Company

By: _____
    SAMUEL RAY HALL, PRESIDENT
    A/K/A SAMUEL R. HALL OR SAMMY HALL

_____
SAMMY HALL
A/K/A SAMUEL R. HALL OR SAMUEL RAY HALL

_____
MARJORIE J. HALL

H-O-H, a Tennessee General Partnership

By: _____
    SAMMY HALL, GENERAL PARTNER
    A/K/A SAMUEL R. HALL OR
    SAMUEL RAY HALL

_____
MARJORIE J. HALL
GENERAL PARTNER

MOUNTAIN NATIONAL BANK

BY: _____
    RICHARD BAKER, SENIOR VICE PRESIDENT

3

however, Borrower will not be in default if it makes payments in accordance with the payment schedule set forth in the Modified Note of even date. The Deed of Trust is amended as follows:

**A. New Principal Indebtedness.** The Borrower promises to pay to the order of Mountain National Bank, **One Million Nine Hundred Fifty Nine Thousand, Eighty Six and 13/100 DOLLARS ($1,959,086.13)** in accordance with the Modified Note of even date hereof, the terms of which are incorporated herein by reference.

**B. Maturity Date.** The Modified Note shall be due and payable in full on or before July 27, 2011.

**C. Collateral.** All collateral securing the initial Deed of Trust and other loan documents executed in connection with the Note shall continue to serve as collateral for the Modified Note. Lender may require additional collateral (non-real property), which shall be evidenced by additional documentation of even date herewith and to be incorporated herein by reference whether or not said documentation becomes part of the public record.

**D. All other terms,** conditions and covenants of the original Note and Deed of Trust shall remain in full force and effect.

**E. Fees.** Borrower agrees to pay all costs of closing this Modification including, but not limited to, attorney fees and recording costs.

2. This instrument covers property that is or may become so affixed to real property as to become property fixtures and also constitutes a fixture filing under 47-9-501 and 502 of Tennessee Code Annotated. **NOTICE PURSUANT TO 47-28-104 OF TENNESSEE CODE ANNOTATED: This Modification and the Deed of Trust secure future advances which are "obligatory advances" as defined in the aforesaid statute.**

3. The Deed of Trust is hereby changed and modified so as to extend the statute of limitations, pursuant to the authority of Tennessee Code Annotated Section 28-2-111 from (10) ten years from the due date of the original indebtedness to ten (10) years from the due date of the indebtedness after execution of this Modification.

4. Borrower hereby expressly authorizes and directs the Lender to take any and all appropriate and necessary action to conform the Deed of Trust and other security instruments in connection with said loan and any and all collateral documents of every kind and description whatsoever to reflect the terms and conditions as herein modified, altered and changed, and by these presents, accepts, affirms and confirms the Borrower's liability under the Note, Deed of Trust, security instruments and any and all other collateral documents, with the terms as herein changed, altered and modified.

5. Borrower further agrees that this Modification shall in no way affect or otherwise release any collateral held by the Lender as security for the Note or any other evidence of indebtedness, but acknowledges and agrees that any and all collateral held by the Lender as security for the Note and other evidences of indebtedness shall continue to secure same to the same extent and in the same manner as if the foregoing Modification had not been effected.

6. This Modification and the Deed of Trust also secure not only existing indebtedness or advances made contemporaneously with the execution hereof, but also secure future advances, whether obligatory, or optional, or both, and whether made under open-end credit agreements or otherwise to the same extent as if such future advances were made contemporaneously with the execution of the Deed of Trust even though no advance is made at the time of the execution of the Deed of Trust and even though no indebtedness is outstanding at the time any advance is made.

7. This Modification and the Deed of Trust secure the performance of Borrower's obligations under the Note and any other loan document (including the loan agreement, if executed) all of which

2

STATE OF TENNESSEE
COUNTY OF SEVIER

Personally appeared before me, the undersigned, a Notary Public, **SAMUEL RAY HALL**, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged such person to be the **PRESIDENT** of the within named bargainor, **HALLS & ALLEN LLC,** a Tennessee limited liability company, and that as such president executed the foregoing instrument for the purpose therein contained, by personally signing the name of the company as president.

WITNESS my hand, at office, this 27th day of July, 2009.

NOTARY PUBLIC FOR STATE OF TENNESSEE

My Commission expires: 9-11-2010

STATE OF TENNESSEE
COUNTY OF SEVIER

Personally appeared before me, the undersigned authority, a Notary Public, **SAMMY HALL** (A/K/A **SAMUEL R. HALL OR SAMUEL RAY HALL) AND WIFE, MARJORIE J. HALL,** with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence) and who acknowledged that they executed the within instrument for the purposes therein contained.

WITNESS my hand, at office, this 27th day of July, 2009.

NOTARY PUBLIC FOR STATE OF TENNESSEE

My Commission Expires: 9-11-2010

STATE OF TENNESSEE
COUNTY OF SEVIER

Personally appeared before me, the undersigned, a Notary Public, **SAMMY HALL (A/K/A SAMUEL R. HALL OR SAMUEL RAY HALL) AND WIFE, MARJORIE J. HALL,** with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who acknowledged that they executed the within instrument for the purposes therein contained, and who further acknowledged that they are **GENERAL PARTNERS** of **H-O-H, a Tennessee General Partnership,** the within named bargainor, a partnership, and that such persons, as such partners, executed the forgoing instrument for the purpose therein contained, by signing the name of the partnership by such persons as general partners.

WITNESS my hand, at office, this 27th day of July, 2009.

NOTARY PUBLIC FOR STATE OF TENNESSEE

My Commission expires: 9-11-2010

4

STATE OF TENNESSEE
COUNTY OF SEVIER

Personally appeared before me, the undersigned, a Notary Public, **RICHARD BAKER**, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who acknowledged that he is the **SENIOR VICE PRESIDENT** of the maker, **MOUNTAIN NATIONAL BANK,** a corporation, and that as such **SENIOR VICE PRESIDENT** he executed the foregoing instrument for the purpose therein contained, by personally singing the name of the corporation as such **SENIOR VICE PRESIDENT.**

WITNESS my hand, at office, this 27th day of July, 2009.

NOTARY PUBLIC FOR STATE OF TENNESSEE

My Commission expires: 9-11-2010

5

## EXHIBIT "A"

**SITUATE** in the Seventh (7th), Eighth (8th), and Fifth (5th) Civil Districts of Sevier County, Tennessee and being **THREE (3) TRACTS** more particularly described as follows:

### TRACT ONE (1):

**SITUATE** in the Seventh (7th) Civil District of Sevier County, Tennessee and being all of **LOT 4 REVISED of the RESUBDIVISION OF LOTS 2R-1 and 4 – PROPERTY OF MINOR ETHERTON,** as the same is shown on a plat of record in Map Book P37, Page 88 in the Register's Office for Sevier County, Tennessee, to which reference is here made for a more particular description.

**CONVEYED HEREIN AND SUBJECT TO** a Joint Use Right of Way deed of record in Book 2817, Page 306 and re-recorded in Book 2821, Page 813, both in the Register's Office for Sevier County, Tennessee which grants and conveys a perpetual joint use easement for ingress and egress to and from Winfield Dunn Parkway and the eastern boundary of the subject property.

**SUBJECT** to a Deed for Utility Easement dated April 20, 2007 and recorded in Book 2828, Page 447 in the Register's Office for Sevier County, Tennessee, which conveys a perpetual easement fifteen (15) feet wide to Brian Eslinger to construct, install and maintain a sewer easement along the subject property.

**BEING** the same property conveyed to Halls & Allen, a Tennessee Limited Liability Company, by deed from Hall & Hall Enterprises, Inc., a Tennessee Corporation, dated May 23, 2007 and recorded in Book 2828, Page 273 in the Register's Office for Sevier County, Tennessee.

### TRACT (2) TWO:

**SITUATE** in the Eighth (8th) Civil District of Sevier County, Tennessee and being **LOT 5R OF SMOKEY VISTA,** as shown by plat of record in Plat Map 33, Page 54 in the Register's Office for Sevier County, Tennessee, to which plat reference is here made for a more particular description.

**SUBJECT** to restrictions, reservations and easements of record in Misc. Book 51, Page 653 and Misc. Book 170, Page 197, and as amended by restrictive covenants of record in Misc. Book 245, Page 353, all in the Register's Office for Sevier County, Tennessee.

**ALSO SUBJECT** to any and all applicable restrictions, easements and building setback lines as are shown in the records of the said Register's Office.

Sammy Hall, Sammy R. Hall, Sammy Ray Hall and Samuel R. Hall is one and the same person.

Marjorie Hall and Marjorie J. Hall is one and the same person.

**BEING** the same property conveyed to Sammy Hall and wife, Marjorie J. Hall, as tenants by the entirety, by deed from Robert L. Dekker and wife, Voncile Dekker, dated February 21, 2002 and recorded in Book 1395, Page 683 in the Register's Office for Sevier County, Tennessee.

### TRACT (3) THREE:

**SITUATE** in the Fifth (5th) Civil District of Sevier County, Tennessee, within the corporate limits of the City of Sevierville, Tennessee and being **Lot 6 of GRANNY'S RIVER BOTTOM, PHASE I,** as shown on a plat entitled "Granny's River Bottom, Phase I, Revision," of record in Large Map Book 1, Page 176 in the Register's Office for Sevier County, Tennessee, to which reference is here made for a more particular description.

THIS CONVEYANCE IS MADE SUBJECT to any and all applicable restrictions, easements, and building setbacks of record in the Register's Office for Sevier County, Tennessee including, but not limited to the following: The above described property may not be used for any business engaged in the selling of gasoline or diesel products through January 1, 2023. This prohibited use shall run with the land and be binding upon the Grantees, their heirs, executors, administrators, successors and assigns for a period ending January 1, 2023; however, the Grantors herein do not subject the above described property to the Reciprocal Easement Agreement by and between Three B Partners, a Tennessee General Partnership and Lowe's Home Center, Inc. dated January 28, 1998, of record in Right-of-way Book 16, Page 258 in the Register's Office for Sevier County, Tennessee, the subject property being conveyed prior to the recordation of such Reciprocal Easement Agreement.

THIS CONVEYANCE IS MADE SUBJECT to the notes, restrictions, easements and building setbacks, as shown on plats of record in Large Map Book 1, Page 176 and Map Book 28, Page 177 in the Register's Office for Sevier County, Tennessee.

BEING a 25% undivided interest only of the property conveyed to H-O-H, a Tennessee General Partnership, having as its sole general partners, Jodi C. Ohman, Joe Ohman, Ralph R. Hamlin, Jeffrey Hamlin and Sammy Hall, also known as Samuel R. Hall and wife, Marjorie Jaclyn Hall, by deed from Jodi C. Ohman, Joe Ohman, Ralph R. Hamlin, Jeffrey Hamlin and Sammy Hall, a/k/a Samuel R. Hall and wife, Marjorie Jaclyn Hall, dated February 28, 2000 and recorded in Book 1035, Page 210 in the Register's Office for Sevier County, Tennessee.

**BK/PG: 3393/224-230**

**09041101**



| 7 PGS : TRUST MODIFICATION | |
| --- | --- |
| ELAINE BATCH: 165198 | |
| 07/31/2009 - 02:43 PM | |
| VALUE | 79658.09 |
| MORTGAGE TAX | 91.61 |
| TRANSFER TAX | 0.00 |
| RECORDING FEE | 40.00 |
| DP FEE | 2.00 |
| REGISTER'S FEE | 1.00 |
| TOTAL AMOUNT | 134.61 |

STATE OF TENNESSEE, SEVIER COUNTY
SHERRY ROBERTSON HUSKEY
REGISTER OF DEEDS

7

# FORBEARANCE AGREEMENT

This Forbearance Agreement ("Agreement") is made and entered this 27th day of July, 2009, by and between **Mountain National Bank** ("Bank"), **Halls & Allen LLC** ("Borrower") and **Ronnie Michele Allen, Marjorie J. Hall and Sammy Hall** ("Guarantors").

**WHEREAS,** Borrower is indebted to the Bank pursuant to a promissory note originally dated May 23, 2007 and in the principal amount of $1,879,428.04 and most recently renewed by promissory note dated July 14, 2008 (the "Note") in the principal amount of $1,878,035.10. The Note is secured, *inter alia*, by a Construction Loan Deed of Trust, Assignment of Rents, Assignment of Contract Rights, Leases and Security Agreement (the "Deed of Trust") encumbering real property located in Sevier County, Tennessee (the "Property"). The Deed of Trust is recorded in the Register's Office for Sevier County, Tennessee in Book 2828, Page 277; and

**WHEREAS,** Guarantors have guaranteed the repayment of the Note pursuant to Continuing Guaranty Agreements dated May 23, 2007 (the "Guaranty Agreements"); and

**WHEREAS,** Marjorie J. and Sammy Hall (the "Halls") are indebted to Bank pursuant to a Home Equity Line of Credit Agreement dated January 14, 2008, with a credit limit of $240,000.00 (the "HELOC Loan"), secured by the Halls' real property (Lot 5R Smokey Vista) located in Sevier County, Tennessee (the "Hall Property") pursuant to a Deed of Trust of record in the Register of Deeds Office for Sevier County, Tennessee recorded in Book 2996, Page 527 (the "Hall Deed of Trust"); and

EXHIBIT

B

**WHEREAS**, the Hall Property is further secured by a deed of trust in favor of CitiMortgage of record in Book 1610, Page 165, Register's Office for Sevier County, Tennessee (the "CitiMortgage Deed of Trust"), for funds used by Borrower and the Borrower has requested that Bank loan sufficient funds to enable the Borrower to pay the entire debt secured by the CitiMortgage Deed of Trust and obtain a release of same; and

**WHEREAS**, the Note was extended by Extension Agreement dated April 29, 2009, but the Note is now in default due to Borrower's failure to comply with the terms of the Extension Agreement; and

**WHEREAS**, Borrower and Guarantors have requested that Bank (a) forbear exercising any of its default rights under the Note and Deed of Trust and (b) modify the terms of the Note and Deed of Trust and HELOC Loan and Hall Deed of Trust; and

**WHEREAS**, the Bank is willing to (a) temporarily forego, pursuant to the terms of this Agreement, exercise of its default remedies under the Note, the HELOC Loan and related Deeds of Trust, (b) advance funds to the Halls to enable the CitiMortgage Deed of Trust to be paid in full and (c) modify the terms of the Note, Deed of Trust, HELOC Loan (and Hall Deed of Trust) upon the terms and conditions stated herein.

**NOW, THEREFORE**, in consideration of the foregoing premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. **ACKNOWLEDGMENT OF DEBT**: Borrower and Guarantors hereby acknowledge that the payoff balance of the Note, as of July 28, 2009 (exclusive of the Bank's costs and expenses associated with this Agreement), is $1,956,202.52; that

there are no defenses to repayment of the Note; and that neither Borrower nor Guarantors have any right of setoff, counterclaim or other legal or equitable defense or claim to prevent repayment of the Note in full as the same may be renewed and/or modified pursuant to the provisions of this Agreement.

The Halls acknowledge that the balance of the HELOC Loan prior to the advance contemplated by Section 3 herein, is $244,981.12; that there are no defenses to repayment of the HELOC LOAN; and that the Halls have no right of setoff, counterclaim or other legal or equitable defense or claim to prevent repayment of the HELOC Loan in full as the same may be renewed and/or modified pursuant to the provisions of this Agreement.

2. **MODIFICATION OF NOTE**: Bank hereby agrees to restructure the repayment schedule of the Note based upon a 30 year amortization with a twenty four month balloon and with an interest rate for a two year period commencing July 27, 2009, of 3.5% (the "Modified Note"); provided, however, the Modified Note will contain provisions relating to a "default rate" of interest in the event of a default under the Modified Note or under this Agreement. The modified note will be secured by all of the same collateral that currently secures the Note and a modification of the Deed of Trust will be executed by all current grantors under the Deed of Trust. The Modified Note will contain a cross default provision whereby a default under the Halls' HELOC Loan will also constitute a default under the Modified Note.

3. **MODIFICATION OF HELOC LOAN**: Bank further agrees to advance funds to the Halls to enable them to pay the entire amount of the CitiMortgage Deed of Trust and obtain a release of same. To accomplish this, the existing HELOC Loan will

- 3 -

be increased, the "reborrow" feature of the HELOC Loan, if any, will be eliminated and the Hall Deed of Trust will be modified to increase the amount of debt secured thereby. The HELOC Loan will contain a cross default provision whereby a default under the Modified Note will also constitute a default under the HELOC Loan. The repayment terms for the modification of the HELOC Loan will be interest at a fixed rate of 3.5%, amortized over 360 months with a balloon payment of the entire balance on July 31, 2011.

4.    **ASSIGNMENT OF RENTS**: Borrower shall execute an Absolute Assignment of Rents and Leases as to the property upon which the Dolphin RV Car Wash is operated.

5.    **GUARANTY AGREEMENTS**: Guarantors hereby acknowledge that their respective Guaranty Agreements remain in full force and effect and are not diminished or revoked by virtue of this Agreement or the actions contemplated by this Agreement and Guarantors shall execute an amendment to the Guaranty Agreements (or new guaranty agreements) to evidence the increase in the guaranteed amount to cover the amount of the Modified Note.

6.    **TIME IS OF THE ESSENCE**: Time is of the essence in the execution of this Agreement and the performance of all provisions, conditions and obligations herein.

7.    **ATTORNEY FEES AND EXPENSES**: Borrower and/or Guarantors shall pay the Bank all of the Bank's costs and expenses associated with this Agreement, the Modified Note and modification to the Deed of Trust, the modification to the HELOC Loan and the Hall Deed of Trust, including any recording fees and appraisal fees. The fees in the amount of $1,540.41 will be added to the modified HELOC Loan and the

-4-

balance of fees and expenses in the amount of $2,883.61 will be added to the Modified Note.

8.    **FURTHER DOCUMENTS**: Borrower and Guarantors shall execute and/or provide any and all other documents requested by Bank or its counsel to secure the Modified Note and Borrower and Guarantors shall cause H-O-H, a Tennessee general partnership, to execute any and all documents that may be required by Bank or its counsel to implement the terms of this Agreement.

8.    **RELEASE OF DEED OF TRUST**: Upon payment of the Modified Note and the HELOC Loan in full, Bank agrees to release the lien of the Deed of Trust, as the same will be modified pursuant to this Agreement. Upon the payment of the HELOC Loan in full and the Modified Note in full, Bank agrees to release the lien of the deed of trust securing said loan, as the same will be modified pursuant to this Agreement.

9.    **NO WAIVER**: The Bank's execution of this Agreement shall not be construed to limit any rights the Bank may have in the future if Borrower or Guarantors default under the terms and provisions of this Agreement, the Guaranty Agreements, the Deed of Trust, the Note, or any other documents heretofore or hereafter executed in connection with the Note, this Agreement, the Guaranty Agreements or the Deed of Trust. The Borrower and the Guarantors acknowledge and agree that the Bank is not obligated and does not agree to further extend the time for the repayment of the Modified Note, except as may hereafter be agreed upon pursuant to a written instrument executed by the Bank, the Borrower and the Guarantors. No action or course of dealing on the part of the Bank, its officers, employees, or agents, nor any failure or delay by the Bank with respect to exercising any right, power, or privilege

- 5 -

under any of the loan documents applicable to the Borrower or Guarantors shall operate as a waiver thereof, except to the extent expressly provided in this Agreement.

9.    **RELEASE**: The Borrower and Guarantors, with the intention of binding themselves and their heirs, personal representatives, successors and assigns, expressly forever release, remise and discharge the Bank, and all of its officers, directors, employees, agents, attorneys, representatives, insurers and legal representatives and its respective predecessors, successors or assigns, from any and all claims, demands, actions, grievances, controversies, contracts, promises, agreements, liabilities, causes of action, whether in law or equity, judgments, executions and damages of whatever nature, past or present, known or unknown, direct or indirect, fixed or contingent, liquidated or non-liquidated, disputed or undisputed which either the Borrower or the Guarantors ever had, or now have, or that anyone claiming by, through or under either of them may now have or claim to have against the Bank, its officers, directors, employees, agents, attorneys, insurers, legal representatives and its respective predecessors, successors and assigns, which might have arisen or occurred from the beginning of time through the date of this Agreement, including without limitation, any of the foregoing arising under or in connection with the loans referenced herein, this Agreement or any other agreement, instrument or document executed in connection therewith or herewith.

10.    **NO FURTHER REPRESENTATIONS**: Neither the Bank, nor any of its officers, directors, employees or attorneys have made any representations of any kind, whether oral or written, to Borrower or Guarantors relating to this Agreement, except as is specifically set forth in this Agreement.

11. **REPRESENTATION OF COMPREHENSION OF DOCUMENTS AND**

**TRANSACTIONS**: The Borrower and Guarantors state and confirm:

(a)    That each has carefully and completely read all the terms of this Agreement;

(b)    That each knows and understands the contents of this Agreement;

(c)    That each has complete information and has had the opportunity to obtain complete information material to the contents and terms hereof and the transactions contemplated hereby;

(d)    That the terms of this Agreement are fully understood, have been negotiated at arms length and are voluntarily accepted;

(e)    That each has signed this Agreement of its/his/her own free will, act and deed; and

(f)    That each has had the opportunity to consult with and be represented by counsel of its/his/her choice.

The parties represent and warrant that they have a comprehensive understanding of this Agreement's contents and meaning and the potential risks and benefits of this Agreement to each party. The parties further represent and warrant that the execution, delivery and performance of this Agreement has been fully authorized and that the parties are competent to enter into this Agreement.

12.    **WAIVER OF JURY TRIAL AS TO ALLEGED CLAIMS ARISING SUBSEQUENT TO THE DATE OF THIS AGREEMENT. TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE BORROWERS AND THE GUARANTORS HEREBY IRREVOCABLY WAIVE ANY RIGHT TO TRIAL BY JURY ON ANY**

ALLEGED CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION ARISING SUBSEQUENT TO THE DATE OF THIS AGREEMENT, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. THE BORROWERS AND THE GUARANTORS AGREE THAT THE BANK MAY FILE A COPY OF THIS SECTION OF THIS AGREEMENT WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY AND BARGAINED AGREEMENT OF THE BORROWER AND THE GUARANTORS TO IRREVOCABLY WAIVE THEIR RIGHT TO TRIAL BY JURY, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN THE BORROWER, THE GUARANTOR AND THE BANK SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION IN SEVIER COUNTY, TENNESSEE, BY A JUDGE SITTING WITHOUT A JURY. THE BORROWER AND THE GUARANTORS HEREBY ACKNOWLEDGE THAT THIS PROVISION MAY NOT BE ORALLY WAIVED AND CERTIFY THAT NO REPRESENTATIVE OR AGENT OF THE BANK, INCLUDING THE BANK'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE BANK WOULD NOT, IN THE EVENT OF SUCH DISPUTE OR CONTROVERSY, SEEK TO ENFORCE THE PROVISIONS OF THIS SECTION. THE BORROWER AND THE GUARANTORS ACKNOWLEDGE THAT THE BANK HAS, IN PART, BEEN INDUCED TO ENTER INTO THIS AGREEMENT IN RELIANCE ON THE PROVISIONS OF THIS SECTION.

13.   **CONDITIONS PRECEDENT TO BANK'S OBLIGATION TO MAKE ADVANCE:** The Bank's obligation to finalize and implement all actions contemplated by this Agreement is expressly conditioned upon the execution and delivery (by Borrower, Guarantors and H-O-H, a general partnership) of all documents required by

the Bank or its legal counsel to effectuate the terms and provisions of this Agreement and to perfect or continue perfection of the Bank's liens that secure the Borrower's or Guarantors' obligations to the Bank.

14. **COVENANTS**: (a) Negative Covenant: Borrower and Guarantors acknowledge that the debt owed to John Parker, Sr. has been subordinated to the debts owed to Bank by Subordination Agreement of record in Book 2828, Page 284, Register's Office for Sevier County, Tennessee. Borrower shall not make, and Guarantors shall not permit Borrower to make, any loan payments or any other payments of any kind to John Parker, Sr. or any other junior lien holder (to the Bank) if Borrower is in default in any repayment obligations to Bank under the terms of the Modified Note to be executed in connection with this Agreement.

(b) Affirmative Covenants: Borrower shall provide Bank with (i) monthly operating statements showing the profits and losses of the Dolphin RV Car Wash operated on a part of the Property (Lot 4 Revised of the Resubdivision of Lots 2R-1 and 4 – Property of Minor Etherton), said statements to be provided within 15 days following the end of each calendar month and (ii) Tax returns of Borrower by the 30th day of April of each year. Guarantors shall provide Bank with detailed personal financial statements each year by the end of March, with the first such statement due on or before March 30, 2010, and with their personal tax returns by April 30 of each calendar year.

14. **DEFAULT**: In the event of a default under the terms of this Agreement or in the Modified Note or any other document executed in connection with this Agreement or the Modified Note, or in the event Borrower fails to maintain its limited liability company in good standing with the State of Tennessee, the Bank shall be free to

exercise any of its rights and remedies under the Modified Note, the modification to the Deed of Trust or any other document executed in connection with this Agreement and the Modified Note.

15. **MISCELLANEOUS**: This Agreement may only be amended or its provisions waived by a written amendment (in the case of an amendment) or a written waiver (in the case of a waiver) signed by all parties hereto. This Agreement shall be construed and interpreted in accordance with the laws of the State of Tennessee. This Agreement and the documents to be executed to implement this Agreement shall not be considered a novation of the existing indebtedness (or security for same) owed by Borrower or Guarantors to Bank. This Agreement may be executed by one or more facsimile transmissions. The execution and performance of this Agreement by Borrower has been duly authorized by all required company action and the person signing this Agreement on behalf of Borrower has been duly authorized to do so.

**IN WITNESS WHEREOF**, the parties have executed this Agreement on the day, month and year first stated above.

Mountain National Bank

By: _____

Richard Baker
Its: **Senior Vice President**

Halls & Allen LLC

By: _____
Ronni Michele Allen
Its: Chief Manager

_____
Ronni Michele Allen

_____
Marjorie J. Hall

_____
Sammy Hall

FNCON07272009030518P

## SIMPLE INTEREST FIXED RATE NOTE/DISCLOSURE AND SECURITY AGREEMENT

| | |
|---|---|
| OFFICER NO. | GDM |
| CUSTOMER NO. | |

BORROWER: "I", "ME" AND "MY" MEANS EACH BORROWER BELOW JOINTLY AND SEVERALLY

LENDER: "YOU" AND "YOUR" MEANS THE LENDER, ITS SUCCESSORS AND ASSIGNS

Mountain National Bank
300 East Main Street
Sevierville, TN 37862
(865)-428-7990

SAMMY HALL AND MARJORIE J. HALL
P. O. BOX 7
KODAK, TN 37764

| | |
|---|---|
| LOAN NO. | |
| RENEWAL OF | |
| LOAN DATE | July 27, 2009 |
| MATURITY DATE | July 31, 2011 |
| LOAN AMOUNT | $307,224.43 |

### NOTE AND SECURITY AGREEMENT

NOTE: FOR VALUE RECEIVED, I PROMISE TO PAY YOU, OR TO YOUR ORDER, AT YOUR ADDRESS ABOVE, THE PRINCIPAL SUM OF: _____
Three Hundred Seven Thousand Two Hundred Twenty Four and 43/100 . _____ DOLLARS ($ 307,224.43 ) PLUS INTEREST FROM
07/31/2009 _____ AT THE RATE OF 3.500 _____ % PER YEAR. INTEREST ACCRUES ON A Actual/360 Day _____ BASIS.

PAYMENTS:

Principal and interest are repayable in 23 equal installment payments, amortized over 360 payment(s), in the amount of $1,388.34 each, commencing on August 31, 2009 and continuing monthly thereafter, and one (1) final payment consisting of the full amount of the principal and all accrued interest remaining due and payable on July 31, 2011.

LATE CHARGES: IN ADDITION TO THE PAYMENTS STATED HEREIN, I AGREE TO PAY LATE CHARGES AS SET FORTH IN THE TRUTH IN LENDING DISCLOSURES BELOW.

POST MATURITY INTEREST: INTEREST WILL ACCRUE AFTER MATURITY ON THE UNPAID BALANCE OF THIS NOTE ON THE SAME BASIS AS INTEREST ACCRUES PRIOR TO MATURITY, UNLESS A SPECIFIC POST-MATURITY INTEREST RATE IS AGREED TO IN THE NEXT SENTENCE. ☒ IF CHECKED, INTEREST WILL ACCRUE AT THE RATE OF 24.00 _____ % PER YEAR ON THE BALANCE OF THIS NOTE NOT PAID AT MATURITY, INCLUDING MATURITY BY ACCELERATION.

MINIMUM FINANCE CHARGE: ☐ IF CHECKED, I AGREE TO PAY A MINIMUM FINANCE CHARGE OF $ _____ IF I PAY THIS LOAN BEFORE YOU HAVE EARNED THAT MUCH IN FINANCE CHARGES.

SECURITY AGREEMENT: ☒ IF CHECKED, I GIVE YOU A SECURITY INTEREST IN THE PROPERTY DESCRIBED BELOW TO SECURE THE OBLIGATIONS OF THIS LOAN.

☒ IF CHECKED, THIS NOTE IS SECURED BY A SEPARATE:

CREDIT LINE DEED OF TRUST DATED JANUARY 14, 2008 AND MODIFICATION OF CREDIT LINE DEED OF TRUST DATED JULY 27, 2009

☒ ALL DEBTS - THE PROPERTY WILL ALSO SERVE AS COLLATERAL FOR ALL PRESENT AND FUTURE DEBTS.

SITUATE IN THE EIGHTH (8TH) CIVIL DISTRICT OF SEVIER COUNTY, TENNESSEE AND BEING LOT 6R OF SMOKEY VISTA

THE PURPOSE OF THE LOAN IS: TERM OUT HELOC AND PAYOFF FIRST MORTGAGE ON HOME _____

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE THE COST OF MY CREDIT AS A YEARLY RATE. | FINANCE CHARGE THE DOLLAR AMOUNT THE CREDIT WILL COST ME | AMOUNT FINANCED THE AMOUNT OF CREDIT PROVIDED TO ME OR ON MY BEHALF. | TOTAL OF PAYMENTS THE AMOUNT I WILL HAVE PAID WHEN I HAVE MADE ALL SCHEDULED PAYMENTS. |
|---|---|---|---|
| 3.613 % | $ 21,779.54 | $ 306,849.43 | $ 328,628.97 |

| NO. OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE |
|---|---|---|
| 23 | $ 1,388.34 | Monthly payments beginning on August 31, 2009 |
| 1 | $ 298,697.15 | Due on or before July 31, 2011 |
| | $ | |
| | $ | |

I HAVE THE RIGHT TO RECEIVE AT THIS TIME AN ITEMIZATION OF THE AMOUNT FINANCED. I ☒ DO ☐ DO NOT WANT AN ITEMIZATION. _____ INITIALS

SECURITY INTEREST: I AM GIVING A SECURITY INTEREST IN:
☐ THE GOODS OR PROPERTY BEING PURCHASED.
☒ COLLATERAL SECURING OTHER LOANS WITH YOU MAY ALSO SECURE THIS LOAN.
☒ OTHER PROPERTY 328 SMOKEY VIEW DRIVE, KODAK, TN

FILING FEES $ 106.31
NON-FILING INSURANCE $ _____

LATE CHARGE:
IF MY PAYMENT IS MORE THAN 15 DAYS LATE, I WILL PAY A LATE CHARGE EQUAL TO 5.000 % OF THE PAYMENT AMOUNT OR $25.00 WHICHEVER IS GREATER.

PREPAYMENT:
IF I PAY THIS NOTE EARLY, I WILL NOT HAVE TO PAY A PENALTY. IF I PAY THIS NOTE EARLY, I WILL NOT BE ENTITLED TO A REFUND OF PART OF THE FINANCE CHARGE.

☐ MINIMUM FINANCE CHARGE: I MAY BE CHARGED A MINIMUM FINANCE CHARGE.
ASSUMPTION: SOMEONE BUYING MY HOUSE CANNOT ASSUME THE REMAINDER OF THE MORTGAGE ON THE ORIGINAL TERMS.
I CAN SEE MY CONTRACT DOCUMENTS FOR ANY ADDITIONAL INFORMATION ABOUT NONPAYMENT, DEFAULT, ANY REQUIRED REPAYMENT BEFORE THE SCHEDULED DATE, AND PREPAYMENT REFUNDS AND PENALTIES.

### ADDITIONAL PROVISIONS

SAMMY HALL, SAMMY R. HALL AND SAMMY RAY HALL ARE ONE AND THE SAME PERSON.

MARJORIE J. HALL, MARJORIE HALL, AND MARJORIE JACELYN HALL ARE ONE AND THE SAME PERSON.

**EXHIBIT**
C
tabbies



ROPERTY INSURANCE I may obtain property insurance from anyone I want that is acceptable to you. If I get this insurance from or through you I will pay $_____ for

_____ of coverage. SINGLE INTEREST INSURANCE: I may obtain single interest insurance from anyone I want that is acceptable to you. If I get the insurance from or

rough you, I will pay $_____ for _____ of coverage. FLOOD INSURANCE: Flood insurance ☐ is ☒ is not required. I may obtain flood insurance from anyone

urt is acceptable to you. If I get the insurance from or through you I will pay $_____ for _____ of coverage.

'e' means an estimate

### ITEMIZATION OF AMOUNT FINANCED

| AMOUNTS PAID TO OTHERS ON MY BEHALF - (*) MEANS WE MAY BE RETAINING A PORTION OF THIS AMOUNT BELOW. | |
|---|---|
| | $ |
| Financed Prepaid Finance Charges | $ 375.00 |
| Public Official Fees | $ 105.31 |
| CITI MORTGAGE LOAN*# | $ 60,702.90 |
| MNB LOAN | $ 244,981.12 |
| 1105 · Document Preparation Fee | $ 300.00 |
| 1108 · Title Insurance Fee | $ 760.10 |
| | $ |
| | $ |
| PLUS: AMOUNT GIVEN TO ME DIRECTLY | $ |
| LESS: PREPAID FINANCE CHARGES | $ 375.00 |
| EQUALS: AMOUNT FINANCED | $ 306,849.43 |

## ADDITIONAL TERMS OF THE NOTE AND SECURITY AGREEMENT

ILSO AGREE TO THE FOLLOWING:

. **DEFINITION:** "Loan" means this Note, Security Agreement, and Truth in Lending Disclosure, regardless of whether described as an integrated document or separate locuments; and any document referred to in the Note, Security Agreement, or Truth in Lending Disclosure is hereby incorporated by reference and made a part of the oan. It also means any extensions, renewals, modifications, or substitutions of this Loan.

. **PAYMENT:** Unless specifically stated otherwise in the payment of the Note, each payment I make will be applied first to any charges, costs, fees, or expenses I owe. ther than principal and interest, then to interest that is due, and finally to unpaid principal.

. **MY OBLIGATION:** I understand and agree that my obligation to pay this Loan is separate and independent of any other person's obligation to pay it. I will still be bligated to pay this Loan even if you release any other person who has agreed to pay, extend new credit or renew or modify this Loan, or relinquish any right(s) you ay have against me or any other person obligated to pay this Loan.

. **MATURITY:** For purposes of this note the term "maturity" shall mean the following:
* If the note is a "demand" note, the date you make your demand or the date that payment of the note is accelerated by you, whichever is earlier;
* If the note is a "demand" note, with a stated alternate maturity date, the date of your demand or the alternative maturity date or the date that you accelerate payment of the note, whichever date is earlier; or
* In all other cases, the date set for the last regularly scheduled payment of principal or the date that you accelerate payment of the note, whichever date is earlier.

. **SET-OFF:** You have the right to set-off my deposit accounts and any other rights that I may have to receive the payment of money from you. You may exercise your ight of set-off without notice to me and without regard to the type or value of collateral or the existence of any guaranty or other agreement to pay this note.
You will not be responsible for the dishonor of any check when that dishonor occurs as a result of your exercise of the right of set-off against my account.

. **PURCHASE MONEY SECURITY INTEREST:** With respect to purchase money security interest arising under this security agreement:
* Payments made on non-purchase money loans secured by this agreement will not be deemed applicable to any purchase money loans, and
* Payments made on any purchase money loan will be applied first to any non-purchase money portion of said loan, with the remaining balance to be applied to the purchase money obligations in the order in which the items of collateral were acquired. A purchase money loan means a loan used in whole or in part to acquire the collateral which secures the loan and any extension, renewal, consolidation of refinancings of such loans.

. **ADDITIONAL SECURITY AND INDEBTEDNESS:** In addition to the collateral described on the face hereof, this Loan is secured by any additions, repairs, replacements, ccessions, products or proceeds, including proceeds of any insurance payable as a result of loss or damage to the collateral, and any similar acquired collateral of the ype specified. However, the security interest shall not attach to household goods not purchased with the proceeds of this loan or to other after-acquired consumer oods, with the exception of accessions, unless such after-acquired consumer goods are acquired within ten (10) days after you make this loan. Each present or future greement securing debt I owe you will also secure the payment of this Loan, unless: (1) the property securing other debt is my principal dwelling and you fail to provide e and all other persons with ownership interest in the dwelling with a required notice of the right to rescind; or (2) the property securing other debt is in household oods.

. **WARRANTY OF TITLE:** I warrant to you that I own the collateral free and clear of liens or security interests, other than the security interest created hereunder and I ill defend the collateral against any asserted claims or demands by other parties.

. **COLLATERAL INSURANCE:** I agree at all times to keep the collateral insured against all insurable hazards in amounts equal to the full cash value of the collateral. Such nsurance shall be in such companies as may be acceptable to you, with provisions satisfactory to you for payment of all losses thereunder to you as your interest may ppear, and, if required by you, I will deposit the policies with you. Any money received by you under said policies may be applied to the payment of any indebtedness ecured hereby, whether or not due and payable, or at your option may be delivered by you to me for the purpose of repairing or restoring the collateral. I hereby assign o you all right to receive proceeds of insurance not exceeding the amounts secured by my loan, direct any insurer to pay all proceeds directly to you, and appoint you s my attorney-in-fact to endorse any draft or check made payable to me in order to collect the benefit of any such insurance.

If I fail to keep the collateral insured as required by you, or if I fail to furnish to you evidence of such insurance, I will be in default, and you may, at your option nd discretion, and in addition to your other remedies at law, in equity or by contract, purchase such insurance. Provided, however, you are not obligated to pay any nsurance premiums or carry any form of insurance on the collateral. If you purchase such insurance, I agree to reimburse you for the premium, plus accrued interest. My bligation to so reimburse you for the purchase of such insurance shall be secured by the collateral, and shall bear interest at the simple interest rate set forth in my loan ocuments or in effect at the time you purchase the insurance. At your option, I agree to either reimburse you on demand for the premium paid by you to purchase such nsurance, to pay said sums in any manner of installments required by you in connection with the remaining payments outstanding pursuant to this my loan, to pay as a alloon payment at the maturity of my loan or to allow you to extend the maturity of my loan in order to provide for my reimbursement of you for the payment of the remium for such insurance. However, your action to reschedule my payments to provide for reimbursement of the premium you paid for such insurance shall not create any new obligation or satisfy or replace my original obligation, but shall be simply a continuation of my original obligation.

I understand the insurance that you purchase WILL NOT provide any form of liability insurance for my benefit or anyone claiming through me. You may obtain this nsurance through one or more companies, other than the insurance company used by me and such insurance will generally be more expensive that the insurance overage I could voluntarily obtain from another insurance company.

If I obtain the required insurance on the collateral after you have purchased insurance hereunder, and I furnish to you satisfactory evidence that such insurance has een purchased, I will be entitled to a refund of the unused portion of the premium for the insurance you purchased, calculated from the effective date of the required nsurance that I purchase on the collateral.

I authorize you to forward any information that you deem necessary to third parties performing services incidental to your rights and duties under this Loan, ncluding but not limited to insurance monitoring and placement services.

**0. PRESERVATION OF COLLATERAL:** I will preserve and maintain the collateral and keep the collateral in good condition and repair and will allow you to inspect the ollateral at any time. If I fail to pay any charges that I am obligated to pay in connection with the secured property, I authorize you to make these payments on my ehalf and add these payments to the unpaid principal balance of this note. These payments will then be secured by the collateral.

**1. TAXES:** I will pay all taxes and other encumbrances on the collateral promptly, and I will otherwise maintain the collateral free and clear of any liens, encumbrances r other security interests.

**2. SALE OF COLLATERAL (AND ASSUMPTION):** I will not sell, convey, lease or otherwise transfer the collateral or any part of it without first obtaining written consent rom you. Unless you otherwise agree in writing, this Loan cannot be assumed by any person. If I attempt to transfer any interest in the collateral, including possession, I ill be in default of this Loan.

**3. DEFAULT:** I will be in default of this Loan if any of the following events occur:
* I fail to make a required payment when due;
* I breach any promise I have made to you under the terms of this note, the security agreement (if applicable) or any other loan or agreement with you;
* Any representation, warranty, promise or statement that I have made to you proves to be (or at the time it was made or given was) materially false or incorrect;
* I die, become insolvent, or initiate bankruptcy or similar proceedings, or am adjudged a bankrupt;
* Any of my property in which you have lien or security interest is attached or otherwise taken by another creditor, including any garnishment of my accounts with you;
* I fail to maintain insurance covering the collateral;
* The maturity of any indebtedness I owe to others is accelerated as a result of the occurrence of a default under this or any other agreement;
* You at any time believe that the prospect for repayment for any portion of the indebtedness secured hereby is significantly impaired.

**4. LENDER'S REMEDIES:** Upon default, you may at your option, do one or more of the following:
* You may, without notice, accelerate the maturity date of this note and require that all unpaid charges, interest and principal balances be immediately due and payable;
* You may exercise your right of set-off against any right I have to receive payment of money from you;
* You may exercise any rights or remedies you have under any other agreement which secures this note;
* You may demand additional security or obligors to insure repayment of this note.

**5. REMEDIES UNDER THE SECURITY AGREEMENT:** If I default, you may exercise all of the rights and remedies available to a secured creditor under the Uniform ommercial Code or other applicable federal or state law. I will be obligated to make the property available to you at a reasonably convenient place and time. I agree that ou are then authorized to take possession of the collateral and sell it as provided under the Uniform Commercial Code or other applicable federal or state aw. I agree that written notice sent to any address on the face of the note by first class mail ten (10) days in advance of any such sale will be reasonable notice.

**6. WAIVER:** To the extent permitted by law, I waive presentment, demand for payment, protest and notice of dishonor. No waiver of a default shall be deemed a aiver of any other or later default. If under the terms of this Loan, a security interest would be created in a principal dwelling used by me or any other person as a ome, you waive the security interest so created unless you have given an appropriate opportunity to rescind and the owner of the property has not exercised that right.

**7. PURCHASE MONEY LOAN:** If this is a purchase money loan, you may include the name of the seller on the check or draft for this loan.

**8. FINANCING STATEMENT:** I authorize you to file a financing statement describing the secured property and any other liens held by you. I represent and warrant that y exact legal name and address of legal residence is set forth on the first page of this Loan.

**9. SECURED BY REAL ESTATE OR RESIDENCE:** If this loan is secured by real estate or a residence that is my personal property, a default and your remedies for default ill be determined by the terms of any separate document creating the security interest, applicable federal or state law, and, to the extent permitted by law and not ontrary to the terms of the separate security document, by this Loan.

**0. ATTORNEY'S FEES AND COLLECTION COSTS:** In the event of default, I agree to pay all reasonable costs you incur to collect on this Loan, including attorney's ees, court costs, and other legal expenses.

**1. GOVERNING LAW:** This Loan shall be governed by the laws of the State of **Tennessee** and the United States of America.

**Notice of Furnishing Negative Credit Information**

You may report information about my loan account to credit bureaus. Late payments, missed payments, or other defaults on my account may be reflected in my credit report.

**Third Party Agreement**

I own the Property described in the Security section of this Note and Security Agreement and I agree to give you a security interest in that Property. I am not personally liable for payment of this debt. If the Borrower defaults, my interest in the secured Property may be used to satisfy the Borrower's debt. By signing, I agree to the terms of this Note and Security Agreement and acknowledge receipt of a complete copy of this Loan.

_____ (Seal)          _____ (Seal)
               Date                                                Date


_____ (Seal)          _____ (Seal)
               Date                                                Date

CO-SIGNERS: As a co-signer I agree that I must pay this note if it is not otherwise paid by Borrower when due. I understand that you may sue any co-signer separately or jointly, and you do not have to notify me if this note is not paid in a timely manner. The obligations of the co-signers executing this Loan shall not be affected by any discharge in bankruptcy granted to one or more Borrowers or co-signers of this Loan.

**Notice to Co-Signer**

You (the Co-Signer) are being asked to guaranty this debt. Think carefully before you do. If the Borrower does not pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up the full amount of the debt if the Borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The Bank can collect this debt from you without first trying to collect from the Borrower. The Bank can use the same collection methods against you that can be used against the Borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This Notice is not the contract that makes you liable for the debt.

X _____          X _____
       Co-Signer Signature or Initials                 Co-Signer Signature or Initials


**FTC NOTICE**

IF APPLICABLE, ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**Signatures**

By signing under seal, I agree to the terms of this Loan and also acknowledge receipt of a copy of this Note and Security Agreement.

_____          07/27/2009
BORROWER: SAMMY HALL                         Date

_____          07/27/2009
BORROWER: MARJORIE J. HALL                   Date

_____
                                              Date

_____
                                              Date

_____
                                              Date

_____
                                              Date

**Co-signers:**

_____
                                           Date

_____
                                           Date

**Guaranty:** By signing under seal, I unconditionally guarantee the payment of the note and any amounts agreed to be paid under the terms of the security agreement. I also agree that, to the extent applicable, all of the terms of this Loan will apply to me.

_____
                                           Date

_____
                                           Date

_____
                                           Date

_____
                                           Date

**BK/PG: 2996/527-529**

**08002569**

| | |
|---|---|
| 3 PGS : TRUST DEED | |
| BATCH: 121285 | |
| 01/15/2008 - 01:58 PM | |
| VALUE | 240000.00 |
| MORTGAGE TAX | 273.70 |
| TRANSFER TAX | 0.00 |
| RECORDING FEE | 15.00 |
| DP FEE | 2.00 |
| REGISTER'S FEE | 1.00 |
| TOTAL AMOUNT | 291.70 |

STATE OF TENNESSEE, SEVIER COUNTY
**SHERRY ROBERTSON HUSKEY**
REGISTER OF DEEDS

102060 ( 018AD005.00 )  Credit Line Deed of Trust
Lot 5R SMOKEY VISTA
328 SMOKEY VIEW DRIVE, SEVIERVILLE, Tennessee 37876

*This is an open-ended Deed of Trust securing obligatory advances.*

*Maximum principal indebtedness for Tennessee Recording Tax purposes is $240,000.00.*

## CREDIT LINE DEED OF TRUST

THIS TENNESSEE DEED OF TRUST, executed the 14th day of January, 2008 by **SAMMY HALL, and wife MARJORIE J. HALL** ("Mortgagor") in favor of **DWIGHT B. GRIZZELL**, P.O. Box 6519, Sevierville, TN 37864-6519 **("Trustee")**, for the use and benefit of **MOUNTAIN NATIONAL BANK ("Beneficiary")**, whose mailing address is P.O. Box 6519, Sevierville, Tennessee 37864-6519.

### WITNESSETH:

FOR AND IN CONSIDERATION OF One Dollar ($1.00), cash in hand paid, and other good and valuable consideration, including the debt and trust herein provided, the receipt and sufficiency of all of which are hereby acknowledged, Mortgagor has this day bargained and sold, and does hereby transfer, assign and convey unto Trustee, all right, title and interest of Mortgagor in and to certain real property in the State of Tennessee, more particularly described as follows:

SITUATE in the Eighth (8th) Civil District of Sevier County, Tennessee and being **LOT 5R OF SMOKEY VISTA**, as shown by plat of record in Plat Map 33, Page 54 in the Register's Office for Sevier County, Tennessee, to which plat reference is here made for a more particular description.

SUBJECT to restrictions, reservations and easements of record in Misc. Book 51, Page 653 and Misc. Book 170, Page 197, and as amended by restrictive covenants of record in Misc. Book 245, Page 353, all in the Register's Office for Sevier County, Tennessee.

ALSO SUBJECT to any and all applicable restrictions, easements and building setback lines as are shown in the records of the said Register's Office.

BEING the same property conveyed to Sammy Hall and wife, Marjorie J. Hall, as tenants by the entirety, by deed from Robert L. Dekker and wife, Voncile Dekker, dated February 21, 2002 and recorded in Book 1395, Page 683 in the Register's Office for Sevier County, Tennessee.

Sevier County Tax Map: **MAP 018A GRP.D PAR. 005.00**

which has the address of: 328 SMOKEY VIEW DRIVE, KODAK, TN 37764

together with all improvements thereon and all other property interests of Mortgagor therein **(the "Mortgaged Premises").**

TO HAVE AND TO HOLD the Mortgaged Premises to the Trustee forever, Mortgagor covenants that Mortgagor is lawfully seized of the Mortgaged Premises, has a good right to convey it, and the same is unencumbered. Mortgagor covenants and binds itself, its successors, heirs and representatives, to warrant and defend the title to the Mortgaged Premises to the Trustee forever against the lawful claims of all persons.

But this conveyance is made IN TRUST for the following uses and trust, and for no other purposes, to-wit:

(a) To secure the payment of indebtedness owing by Mortgagor to Beneficiary in the amount of **Two Hundred Forty Thousand dollars and Zero cents ($240,000.00)**, with interest thereon due and payable over a term of _180_ months, evidenced by a certain Promissory Note dated _January 14, 2008_, the terms of which are incorporated herein by reference.

(b) To secure all sums owed the Beneficiary by Mortgagor or expended by Beneficiary for Mortgagor's account or benefit pursuant to the terms of this Deed of Trust, with interest thereon as provided herein, and the faithful performance of all terms and conditions contained herein.

(c) To secure the payment of all court costs, expenses and costs of whatever kind incident to the collection of any indebtedness secured hereby and the enforcement or protection of the lien of this conveyance, including reasonable attorneys' fees.

1

(d) To secure the payment of any other indebtedness of Mortgagor to Beneficiary, however evidenced, now existing or hereafter arising.

d) To secure the payment of any other indebtedness, including all obligations, debts and liabilities, plus interest thereon, of Borrower to Lender as well as all claims by Lender against Borrower whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note whether voluntary or otherwise, whether due or not due, absolute or contingent, liquidated of un-liquidated and whether Borrower may be liable individually or jointly with other, whether obligated as guarantor or otherwise, and whether recovery upon such indebtedness may be or hereafter may become barred by any statue of limitations and whether such indebtedness may or be hereafter may become otherwise unenforceable. Such indebtedness shall not include any debt subject to the disclosure requirements of the Federal Truth-in-Lending Act if at the time such liability or indebtedness is incurred any legally required disclosure of the lien afforded hereby respecting such debt shall not have been made.

1. **Covenants of Mortgagor with Beneficiary.** In addition to the covenants and warranties hereinabove provided, Mortgagor further covenants and agrees with the Beneficiary as follows:

(a) **Payment of Secured Debt.** To pay to the Beneficiary, when due, the interest and principal of the debt secured hereby, together with reasonable attorneys' fees and other costs.

(b) **No Liens or Assessments.** Not to permit any lien or assessment, other than current taxes not delinquent, to encumber the Mortgaged Premises.

(c) **Insurance.** To maintain insurance on all buildings and other improvements on the Mortgaged Premises against damage by fire, windstorm and other risks normally insured against under extended coverage with companies and amounts satisfactory to Beneficiary. All policies evidencing such insurance shall have attached thereto standard mortgagee riders making such insurance payable to Beneficiary as its interest may appear, and all such policies or appropriate certificates, at Beneficiary's request, shall be deposited with it.

(d) **Maintenance, Waste, Use, Alterations, and Encumbered Personality.** To keep all buildings, fences and other improvements on the Mortgaged Premises in as good repair and condition as the same are in at this date, or shall be upon its construction, as the case may be, and to permit no waste and especially no cutting of timber or removal of minerals except for the actual needs of the property. Mortgagor shall not make or permit, without Beneficiary's written consent, (a) any use of the Mortgaged Premises for any purpose other than that for which the same is now used or intended to be used; (b) any alterations of the buildings, improvements, fixtures, apparatus, machinery, and equipment now or hereafter erected or located upon the said premises; (c) any purchase, lease or agreement under which title is reserved in the vendor respecting any fixtures, apparatus, machinery, equipment, or personal property to be placed in or upon the Mortgaged Premises unless any such interest is subordinated to the line of this Deed of Trust; and Mortgagor shall execute and deliver, from time to time, such further instruments as reasonably may be required by Beneficiary in order to confirm and assure the priority of the lien vested by this instrument.

(e) **Hazardous Materials.** To keep the Mortgaged Premises free of any substantial amounts of waste or debris and free from any material amounts of contamination, hazardous materials, hazardous substances, or any other material or substance, the presence of which is prohibited by any local, State, or Federal authority.

(f) **Rents and Profits.** In the event of foreclosure under the provisions of this instrument or of any note or other instrument evidencing any indebtedness secured hereby, Beneficiary or its agent shall have the right forthwith to take possession of the Mortgaged Premises and to collect the rents and profits then owing or thereafter accruing therefrom, to be credited upon any of the obligations secured hereby.

(g) **Appointment of Receiver.** Mortgagor acknowledges the propriety of, and consents to, the appointment of a receiver for the Mortgaged Premises in the event that any action is commenced involving the Mortgaged Premises to foreclose this Deed of Trust.

(h) **Advancements by Beneficiary.** Beneficiary may, at its option, advance and pay all sums necessary to protect and preserve the Mortgaged Premises. All sums so advanced by the Beneficiary shall become a part of the indebtedness secured hereby and shall bear interest from the date or dates of payment at the maximum contract rate of interest now or hereafter permitted by applicable law. Such sums may include, but are not limited to, insurance premiums, taxes, assessments and liens which may be, or become prior and senior to this Deed of Trust as a lien on the Mortgaged Premises, or any part thereof, and all costs, expenses and attorney's fees incurred by the Beneficiary resulting from any and all legal or equitable proceedings which relate to this Deed of Trust or to the Mortgaged Premises, or any part thereof.

(i) **Condemnation.** In the event of a public taking or condemnation respecting any part of the Mortgaged Premises by proper authority, any damages paid or award allowed shall, at the option of the Beneficiary, be applied first toward the satisfaction of the indebtedness secured hereby.

(j) **Conveyance of Mortgaged Premises.** Mortgagor shall not encumber, pledge, convey, transfer or assign any of its interest in the Mortgaged Premises without the prior written consent of Beneficiary. Beneficiary's consent to such transfer, if given, shall not release or alter in any manner the liability of Mortgagor or anyone who has assumed or guaranteed the payment of the indebtedness secured hereby or any portion thereof. At the option of Beneficiary, the indebtedness secured hereby shall be immediately due and payable in the event that Mortgagor conveys all or any portion of the Mortgaged Premises or any interest therein, or in the event that Mortgagor's equitable title thereto or interest therein shall be assigned, transferred or conveyed in any manner, without obtaining Beneficiary's prior written consent. Consent given by Beneficiary for any prior transfer shall not preclude Beneficiary from declaring the indebtedness secured hereby due and payable for any subsequent transfer.

2. **Events of Default and Acceleration.** In the event the Mortgagor fails to make any payment or fails to perform any other obligation provided for herein or in any instrument secured hereby, or if the Mortgagor shall abandon the Mortgaged Premises, or make an assignment for creditors, or be adjudged bankrupt, or have filed in his behalf or against him any type of insolvency or bankruptcy proceeding, or if a trustee or receiver shall be appointed for the Mortgagor or for any part of the mortgaged premises, then and in such event, the entire indebtedness secured hereby shall become immediately due and payable at the option of the beneficiary, without notice, and this deed of trust may be foreclosed accordingly. Upon such foreclosure the beneficiary may continue the abstract of title to the Mortgaged Premises, if any, or obtain other appropriate title evidence, and may add the cost thereof to the principal balance due.

3. **Nonwaiver, Remedies.** Delay by the Beneficiary in the exercise of any of its rights hereunder shall not preclude the exercise thereof so long as the Mortgagor is in default hereunder, and no failure of the Beneficiary to exercise any of its rights hereunder due to any default shall likewise not preclude the exercise thereof in the event of a subsequent default by the Mortgagor hereunder, all such rights being continuing ones. The Beneficiary may enforce any one or more of its rights or remedies hereunder successively or concurrently.

4. **Remedies.** Now, if the Mortgagor shall pay said indebtedness, and all installments thereof, when due, according to the terms hereof, or of any note or other instrument evidencing the same, and pay taxes, keep up repairs, keep the Mortgaged Premises insured, and perform fully all of the Mortgagor's obligations hereunder and under any instrument evidencing any indebtedness secured hereby, then this trust conveyance shall be of no further force or effect. But if Mortgagor fails to pay said indebtedness, or any part or installment thereof, promptly at maturity, or if Mortgagor fails to pay taxes, keep up repairs, keep said Mortgaged Premises insured, or perform Mortgagor's other obligations, covenants and agreements as herein provided; or if Mortgagor fails to reimburse the Trustee or lawful owner and holder of said indebtedness for all sums, with interest, so expended by the Trustee or the Beneficiary, within thirty days from date of such payment, this trust conveyance shall remain in full force and effect, and at the option of the Beneficiary, all remaining unpaid indebtedness shall become due and payable at once, without

2

notice, and the said Trustee, or his successor in trust, is hereby authorized and empowered upon giving twenty days notice of the time and place of sale by three publications in any newspaper, daily or weekly, published in the county wherein the Mortgaged Premises is wholly or partially located, to sell the Mortgaged Premises (or any part thereof) to the highest bidder for cash (or credit upon the indebtedness secured hereby at the option of the Beneficiary if Beneficiary is the successful bidder), at public outcry, free from the equity of redemption, homestead, dower, elective share, the statutory right of redemption, and all other exemptions of every kind, which are hereby expressly waived; and the said Trustee or his successor in trust, is authorized and empowered to execute and deliver a deed to the purchaser. Beneficiary may bid at any sale under this trust conveyance. Mortgagor agrees that the Trustee may, at any time after default in the payment of any part of said indebtedness, enter and take possession of the Mortgaged Premises, and further agrees that in the event the Trustee fails, before selling the Mortgaged Premises, as herein provided, to enter and take possession thereof, the purchaser shall be entitled to immediate possession thereof upon the delivery to him by the Trustee of a deed of said property.

In the event of the death, absence, inability or refusal to act of the said Trustee, or for any other reason AT THE OPTION OF THE Beneficiary at any time when action under the foregoing powers and trusts may be required or contemplated, the Beneficiary is hereby authorized to name and appoint a successor to execute this trust, and the title herein conveyed to the above-named Trustee shall be vested in said successor.

In the event of a sale of the Mortgaged Premises under and by virtue of this trust, Mortgagor and all persons under it shall be and become the tenants at will of the purchaser, said tenancy to be terminated at the option of said purchaser upon five days= written notice.

Upon any sale under this Deed of Trust, the proceeds will be applied by the Trustee:

First - To pay all the costs and charges of executing this trust, including attorney's fees and the expenses of any litigation which may arise on account of the execution and enforcement of this trust, or in connection therewith as above provided.

Second - To pay all indebtedness secured hereby, or any balance thereof then remaining unpaid.

Third - The residue to be paid to Mortgagor or such other person or persons as may be lawfully entitled thereof.

5. **Extensions, Etc.** The Beneficiary may extend the time for the payment of all or any part of the indebtedness, or reduce or rearrange the payments thereof, or accept a renewal note or notes therefore, without consent of any junior lienholder, and without the consent of the Mortgagor if the Mortgagor has then parted with title to the Mortgaged Premises. No such extension, reduction or renewal shall affect the priority of this Deed of Trust or impair the security hereof in any manner whatsoever or release discharge or affect in any manner the personal liability of the Mortgagor to the Beneficiary.

6. **Miscellaneous.** The titles of the paragraphs in this instrument are for convenience only, and do not limit the contents of such paragraphs. All rights and obligations hereunder shall extend to, and be binding upon the respective heirs, representatives, successors and assigns of the Mortgagor, Trustee and Beneficiary of this Deed of Trust. When applicable, use of the singular form or any word shall mean and apply to the plural, masculine, feminine or neuter as the case may be.

**IN WITNESS WHEREOF**, the Mortgagor has executed this Deed of Trust as of the day and date first above written.

_____
SAMMY HALL

_____
MARJORIE J. HALL

STATE OF TENNESSEE
COUNTY OF SEVIER

Personally appeared before me, the undersigned authority, a Notary Public, **SAMMY HALL AND WIFE, MARJORIE J. HALL**, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence) and who acknowledged that they executed the within instrument for the purposes therein contained.

WITNESS my hand, at office, this 14th day of January, 2008.

_____
NOTARY PUBLIC

My Commission Expires: 2/22/2011

MARCIA M. REAGAN
STATE
OF
TENNESSEE
NOTARY
PUBLIC
SEVIER COUNTY

PREPARED BY:
JOHNSON, MURRELL & ASSOCIATES, P.C.,
ATTORNEYS AT LAW
150 COURT AVENUE
SEVIERVILLE, TN 37862

3

This Instrument Prepared by:
Thomas H. Dickenson
Hodges, Doughty & Carson, PLLC
P.O. Box 869
Knoxville, TN 37901

**The maximum principal indebtedness for Tennessee Recording Tax Purposes is $67,224.43 (new money).**

## MODIFICATION OF CREDIT LINE DEED OF TRUST

This **Modification of Credit Line Deed of Trust** ("Modification") is executed the 27th day of July, 2009, by and between **SAMMY HALL (A/K/A SAMUEL RAY HALL OR SAMUEL R. HALL) AND WIFE, MARJORIE J. HALL** ("Borrower") and **MOUNTAIN NATIONAL BANK** (hereinafter referred to as "Lender").

### WITNESSETH:

**WHEREAS,** Borrower executed a Note payable to Lender dated January 14, 2008 in the original principal amount of **Two Hundred Forty Thousand ($240,000.00)** (hereinafter referred to as the **"Note"**). The Note is secured by a Deed of Trust in favor of Lender of record in **Book 2996, Page 527** in the Register's Office for Sevier County, Tennessee (the "Deed of Trust"); and

**WHEREAS,** the Deed of Trust encumbers the real property more particularly described on **Exhibit "A"** attached hereto and incorporated by reference (the "Collateral); and

**WHEREAS,** the Borrower and Lender desire to modify the terms of the Deed of Trust to extend the payment term and to advance additional funds.

**NOW, THEREFORE,** in consideration of One ($1.00) Dollar and other good and valuable consideration, including the covenants and agreements contained herein, the receipt and legal sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1. The Bank and the Borrower agree to modify the terms and conditions for repayment of the Borrower's obligation in accordance with the terms and conditions set forth herein and in the Modified Note of even date. It is expressly agreed that this Modification is supplemental to that evidenced by the Note and Modified Note of even date, which by this reference is made a part hereof. All of the terms and conditions of the Note and Deed of Trust, unless specifically modified herein, are made a part of this Modification. The parties agree that they do not intend for this Modification to constitute a novation and do not discharge the Borrower's pre-existing obligation under the Note or Modified Note of even date; however, Borrower will not be in default if it makes payments in accordance with the payment schedule set forth in the Modified Note of even date. The Deed of Trust is amended as follows:

**A. New Principal Indebtedness.** The Borrower promises to pay to the order of Mountain National Bank, **Three Hundred Seven Thousand, Two Hundred Twenty Four and 43/100 DOLLARS ($307,224.43)** in accordance with the Modified Note of even date hereof, the terms of which are incorporated herein by reference.

**B. Maturity Date.** The Modified Note shall be due and payable in full on or before July 31, 2011.

1

**C. Collateral.** All collateral securing the initial Deed of Trust and other loan documents executed in connection with the Note shall continue to serve as collateral for the Modified Note. Lender may require additional collateral (non-real property), which shall be evidenced by additional documentation of even date herewith and to be incorporated herein by reference whether or not said documentation becomes part of the public record.

**D. All other terms,** conditions and covenants of the original Note and Deed of Trust shall remain in full force and effect.

**E. Fees.** Borrower agrees to pay all costs of closing this Modification including, but not limited to, attorney fees and recording costs.

2. This instrument covers property that is or may become so affixed to real property as to become property fixtures and also constitutes a fixture filing under 47-9-501 and 502 of Tennessee Code Annotated.

3. The Deed of Trust is hereby changed and modified so as to extend the statute of limitations, pursuant to the authority of Tennessee Code Annotated Section 28-2-111 from (10) ten years from the due date of the original indebtedness to ten (10) years from the due date of the indebtedness after execution of this Modification.

4. Borrower hereby expressly authorizes and directs the Lender to take any and all appropriate and necessary action to conform the Deed of Trust and other security instruments in connection with said loan and any and all collateral documents of every kind and description whatsoever to reflect the terms and conditions as herein modified, altered and changed, and by these presents, accepts, affirms and confirms the Borrower's liability under the Note, Deed of Trust, security instruments and any and all other collateral documents, with the terms as herein changed, altered and modified.

5. Borrower further agrees that this Modification shall in no way affect or otherwise release any collateral held by the Lender as security for the Note or any other evidence of indebtedness, but acknowledges and agrees that any and all collateral held by the Lender as security for the Note and other evidences of indebtedness shall continue to secure same to the same extent and in the same manner as if the foregoing Modification had not been effected.

6. This Modification and the Deed of Trust also secure not only existing indebtedness or advances made contemporaneously with the execution hereof, but also secure future advances, whether obligatory, or optional, or both, and whether made under open-end credit agreements or otherwise to the same extent as if such future advances were made contemporaneously with the execution of the Deed of Trust even though no advance is made at the time of the execution of the Deed of Trust and even though no indebtedness is outstanding at the time any advance is made.

7. This Modification and the Deed of Trust secure the performance of Borrower's obligations under the Note and any other loan document (including the loan agreement, if executed) all of which documents are referred to as "the loan documents". A default under the loan documents constitutes a default under this Modification and the Deed of Trust. This Modification and the Deed of Trust shall also secure any extensions, renewals, refinancings or modifications of the Note, and changes in the form of said indebtedness and the instruments evidencing the same, without the necessity of noting such renewal, extension, refinancing or modification on this Modification, or the Deed of Trust or recording any notation in the Register of Deeds Office. The terms of said indebtedness are incorporated hereby by reference as fully as if copied herein verbatim.

8. This conveyance shall also secure the payment of any other indebtedness, presently existing or hereafter arising, of any type or kind, direct or contingent, owed or to be owed by Borrower (or any one of the Borrowers) to Lender; and this Modification and this Deed of Trust shall remain in full force and effect until all obligations secured hereby are fully paid; provided, however, this Modification and the Deed of Trust shall not secure any such other credit subject to the provisions of Regulation Z of the Board of

2

Governors of the Federal Reserve System unless any required Notice of the Right to Cancel has been given.

9. The parties agree to this Modification and agree that the Note shall be modified as set out above and that the Note and all the covenants and conditions contained therein shall remain the same except as is modified by this instrument. The parties agree that this Modification does not constitute a novation, an accord or satisfaction of the Note, it being the parties intention that the Note shall continue in all respects except for the amendments described herein.

10. Section 3 of the Deed of Trust, along with any other provisions of the Deed of Trust that in any way relate to an assignment of rents and leases, is hereby deleted in its entirety, and such provisions are replaced by an "Absolute Assignment of Rents and Leases" executed contemporaneously herewith.

*11. A release of the Deed of Trust shall also be and constitute a release of this Modification.*

IN WITNESS WHEREOF, the parties have executed this Modification as of the day and date first above written.

SAMMY HALL
A/K/A SAMUEL R. HALL OR SAMUEL RAY HALL

MARJORIE J. HALL

MOUNTAIN NATIONAL BANK
BY:
RICHARD BAKER, SENIOR VICE PRESIDENT

3

STATE OF TENNESSEE
COUNTY OF SEVIER

Personally appeared before me, the undersigned authority, a Notary Public, **SAMMY HALL AND WIFE, MARJORIE J. HALL,** with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence) and who acknowledged that they executed the within instrument for the purposes therein contained.

WITNESS my hand, at office, this 27th day of July, 2009.

NOTARY PUBLIC FOR STATE OF TENNESSEE

My Commission Expires: 9-11-2010

STATE OF TENNESSEE
COUNTY OF SEVIER

Personally appeared before me, the undersigned, a Notary Public, **RICHARD BAKER,** with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who acknowledged that he is the **SENIOR VICE PRESIDENT** of the maker, **MOUNTAIN NATIONAL BANK,** a corporation, and that as such **SENIOR VICE PRESIDENT** he executed the foregoing instrument for the purpose therein contained, by personally signing the name of the corporation as such **SENIOR VICE PRESIDENT.**

WITNESS my hand, at office, this 27th day of July, 2009.

NOTARY PUBLIC FOR STATE OF TENNESSEE

My Commission expires: 9-11-2010

4

## EXHIBIT "A"

**SITUATE** in the Eighth (8th) Civil District of Sevier County, Tennessee and being **LOT 5R OF SMOKEY VISTA,** as shown by plat of record in Plat Map 33, Page 54 in the Register's Office for Sevier County, Tennessee, to which plat reference is here made for a more particular description.

**SUBJECT** to restrictions, reservations and easements of record in Misc. Book 51, Page 653 and Misc. Book 170, Page 197, and as amended by restrictive covenants of record in Misc. Book 245, Page 353, all in the Register's Office for Sevier County, Tennessee.

**ALSO SUBJECT** to any and all applicable restrictions, easements and building setback lines as are shown in the records of the said Register's Office.

Sammy Hall, Sammy R. Hall, Sammy Ray Hall and Samuel R. Hall is one and the same person.

Marjorie Hall and Marjorie J. Hall is one and the same person.

**BEING** the same property conveyed to Sammy Hall and wife, Marjorie J. Hall, as tenants by the entirety, by deed from Robert L. Dekker and wife, Voncile Dekker, dated February 21, 2002 and recorded in Book 1395, Page 683 in the Register's Office for Sevier County, Tennessee.

BK/PG: 3393/219-223
09041100

6 PGS : TRUST MODIFICATION
ELAINE BATCH: 155198
07/31/2009 - 02:43 PM
VALUE                                    67224.43
MORTGAGE TAX                                77.30
TRANSFER TAX                                 0.00
RECORDING FEE                               25.00
DP FEE                                       2.00
REGISTER'S FEE                               1.00
TOTAL AMOUNT                               105.30
STATE OF TENNESSEE, SEVIER COUNTY
SHERRY ROBERTSON HUSKEY
REGISTER OF DEEDS

5